STATE, Respondent, v. YANCEY, Appellant.

*September 7—October 4, 1966.*

For the appellant there was a brief by *James M. Shellow* and *Shellow, Shellow & Coffey,* all of Milwaukee, and oral argument by *James M. Shellow.*

For the respondent the cause was argued by *Robert E. Sutton,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

HALLOWS, J. At least six issues are raised, which will be considered seriatim. The first question is whether there is sufficient evidence to sustain the conviction of the defendant. At the trial the state called as witnesses two men who had been victims of armed robberies, a detective who had worked on the case, and two alleged coconspirators of the defendant. One of these coconspirators, James Preston, invoked his privilege against self-incrimination; the other, Charles Underwood, testified and made out all the elements of the crime of conspiracy to commit armed robbery by the defendant. In general, his testimony involved the defendant, who operated a tavern on the north side of Milwaukee, in planning robberies, furnishing the firearms and sometimes a car, giving advice, and receiving a share of the proceeds. This testimony disclosed several robberies were committed including Konopski's Tavern on March 1, 1963, and Pulaski Savings & Loan Association on April 5, 1963, by members of what might be called a gang composed of Charles Underwood, James Preston, Robert Freeman, Sonny Carter, Johnnie Johnson and Earl Tolliver. Some of the details of the coconspirator's story excepting those relating to the defendant's activities were corroborated by the other witnesses.

The appellant takes the view there was not sufficient corroboration and the coconspirator's testimony implicating the defendant stands alone and in a conspiracy case the uncorroborated testimony of an alleged coconspirator should be insufficient to sustain a conviction. Recently this court in *Sparkman v. State* (1965), 27 Wis. (2d) 92, 95, 133 N. W. (2d) 776, 778, stated the uncorroborated testimony of an accomplice was sufficient to support a conviction for a felony. We pointed out that under that common-law rule existing in this state uncorroborated testimony of an accomplice could be accepted by a jury unless that testimony was "bald perjury, preposterous, or self-contradictory." This has been the rule in Wisconsin since *Mercer v. Wright* (1854), 3 Wis. 568 (*645). In this state it is customary to caution the jury to scrutinize such uncorroborated testimony and to accept it with caution. In the instant case, such instruction was given to the jury.

The appellant attempts to distinguish prior Wisconsin cases which have upheld or stated the rule, pointing out that in many of those cases the conviction was reversed or the testimony was not in fact that of an accomplice or the testimony was corroborated.[1] Only *Black v. State* (1884), 59 Wis. 471, 18 N. W. 457, and *Millin v. State* (1926), 191 Wis. 188, 210 N. W. 411, squarely affirm a conviction on uncorroborated testimony of an

[1] *State v. Baker* (1962), 16 Wis. (2d) 364, 114 N. W. (2d) 426 (conviction reversed); *State v. Perlin* (1955), 268 Wis. 529, 68 N. W. (2d) 32 (corroborated); *State v. Ketchum* (1953), 263 Wis. 82, 56 N. W. (2d) 531 (corroborated); *Varga v. State* (1930), 201 Wis. 579, 230 N. W. 629 (not accomplice); *Abaly v. State* (1916), 163 Wis. 609, 158 N. W. 308 (conviction reversed); *Means v. State* (1905), 125 Wis. 650, 104 N. W. 815 (not accomplice); *Murphy v. State* (1905), 124 Wis. 635, 102 N. W. 1087 (conviction reversed); *Porath v. State* (1895), 90 Wis. 527, 63 N. W. 1061 (conviction reversed); *State v. Juneau* (1894), 88 Wis. 180, 59 N. W. 580 (not accomplice); *Ingalls v. State* (1880), 48 Wis. 647, 4 N. W. 785 (conviction reversed); *Mack v. State* (1880), 48 Wis. 271, 4 N. W. 449 (conviction reversed).

accomplice and these cases did not involve a conspiracy to commit a crime. We think this argument is not persuasive. When this court deliberately considers a proposition of law and pronounces it and if the statement is clear and unambiguous, we consider it a binding statement of law.[2]

Appellant argues the uncorroborated-testimony doctrine should not be extended to a conspiracy because such crime is akin to treason, which, by sec. 3, art. III, cl. 1, of the United States constitution and sec. 10, art. I, of the state constitution, requires proof thereof by two witnesses. See 87 C. J. S., Treason, p. 919, sec. 13c. Outside of treason, the common-law rule is one of general application and has been applied to all classes of crime including conspiracy. 23 C. J. S., Criminal Law, p. 86, sec. 810 (1). We see no valid reason why the testimony of a coconspirator is any the less trustworthy in a case involving conspiracy to commit a robbery than that of an accomplice in a case of robbery. Consequently, we cannot hold as a matter of law the uncorroborated testimony of a coconspirator is so lacking in probative value as to render it insufficient to sustain a verdict of guilty. The trier of facts should be allowed to accept or reject such testimony, and if in a given case under proper instructions uncorroborated testimony of a coconspirator or accomplice is accepted as credible and convinces the trier of the facts beyond a reasonable doubt of the guilt of the accused, the testimony is sufficient.

The appellant contends it was error for the court not to give cautionary instructions *sua sponte* when a prosecution witness asserted his privilege against self-incrimination. During the trial the state called James Preston, an alleged coconspirator, who testified he had a prior

[2] In *Brausen v. Daley* (1960), 11 Wis. (2d) 160, 167, 105 N. W. (2d) 294, this court elevated language deprecated as dicta to the status of a statement of law, because the dicta struck us "as being good sense and good law."

criminal record, had been released from prison in December, 1962, had come to Milwaukee, and was now in prison for armed robbery and attempted murder. Upon being asked whether he knew the defendant he refused to answer "due to the fact it may tend to incriminate me on the grounds that I have legal action in process concerning my sentence and my conviction." Preston was then asked, "You have already been convicted, haven't you, Mr. Preston?" He again refused to answer on the ground it might tend to incriminate him. In the absence of the jury the prosecutor expressed surprise at the witness' conduct and stated that before the trial Preston had been cooperative and that he had expected the witness to testify. Both the prosecutor and counsel for the defense conferred with the witness and he indicated he would not testify. The witness was then excused.

The appellant's trial counsel did not ask for cautionary instructions then or at the time the jury was charged. But it is now contended the trial court should on its own motion have instructed that no inferences as to the defendant's guilt should be drawn from the invocation of the privilege by this witness. The appellant relies particularly on *San Fratello v. United States* (5th Cir. 1965), 340 Fed. (2d) 560; *United States v. Maloney* (2d Cir. 1959), 262 Fed. (2d) 535; *Fletcher v. United States* (D. C. Cir. 1964), 332 Fed. (2d) 724. Each of these cases, however, involve a prosecutor calling a witness whom he knew would invoke his privilege. In *San Fratello*, the witness had claimed her privilege in a previous trial and had advised the prosecutor she would again assert it. In *Maloney*, the prosecution conceded it knew or anticipated two of its key witnesses would invoke the privilege against self-incrimination. In *Fletcher* the court permitted detailed questions to be asked concerning the witness' relationship to the defendant after the witness claimed the privilege. The conduct of the prosecutor in these cases amounted to deliberate misconduct which denied the accused a fair trial.

Neither is *Namet v. United States* (1963), 373 U. S. 179, 83 Sup. Ct. 1151, 10 L. Ed. (2d) 278, cited by appellant, controlling. In that case it was claimed the prosecution called witnesses whom they knew would invoke their Fifth-amendment privilege. The court pointed out that in previous cases on this question reversals were based either on the misconduct of the prosecutor or on a finding that the failure of the witness to testify added "critical weight" to the prosecution's case. Finding neither of these elements present, the court did not consider the question of whether the defendant would have been entitled to instructions or other curative devices if he had asked for them. The court, in answer to the argument that it should have *sua sponte* taken some affirmative action, said it saw "no reason to require such extravagant protection against errors which were not obviously prejudicial and which the petitioner himself appeared to disregard."

In the instant case we do not find any prosecutorial misconduct. His statement that he was surprised and expected the witness to answer stands uncontradicted. His second question concerning the previous conviction of the witness seems to be a result of surprise on his part and a puzzlement of why the witness had asserted his privilege. The prosecutor's action did not amount to "planned or deliberate attempts by the government to make capital out of" the witness' refusal to testify or to "build its case out of inferences arising from use of the testimonial privilege." *Namet,* 373 U. S., at pages 186, 189.

Nor do we think the claiming of privilege on these two questions by the witness added critical weight to the prosecution's case. The evil here is the drawing of an impermissible inference from the invocation of the privilege. The first question merely asked whether the witness knew the defendant. An inference from a "Yes" answer to this would hardly be critical since it had already been testified that the witness knew the defendant,

and such knowledge does not tend to prove a conspiracy. The refusal of the witness to answer the second question cannot be considered an invitation to the jury to infer that Preston had already been convicted of the conspiracy offense for which the defendant was being tried. If the refusal to answer added any weight to the state's case, it was not critical.

The most recent case discussing the problem is *United States v. Compton* (6th Cir. 1966), 365 Fed. (2d) 1. The court there stated government counsel need not refrain from calling a witness whose attorney appears in court and advises the court and counsel that the witness will claim his privilege and will not testify if government counsel has an honest belief that the witness has information which is pertinent to the issue in the case and which is admissible if the privilege is not invoked.

When the objectionable inferences which might be drawn from the invocation of the privilege against self-incrimination are prejudicial, we think if the defendant's counsel wants cautionary instructions he should ask for them. If the defense counsel considers the conduct of the prosecutor objectionable or the claim of privilege prejudicial, he may object and ask for cautionary instructions at that time or he may request instructions on the subject in the judge's charge to the jury. Whether or not such instructions should be asked for in a case would seem to be a matter of trial strategy and the court at the risk of error should not be required to give such instruction *sua sponte*. This problem is not unlike that of whether a trial court should give instruction in the absence of a request that no presumption arises from the failure of the accused to take the witness stand in his own behalf. *Johns v. State* (1961), 14 Wis. (2d) 119, 109 N. W. (2d) 490.

Appellant next predicates reversal upon an uncorrected misstatement of the coconspirator witness as to the num-

ber of his prior convictions. Upon cross-examination at the trial, Charles Underwood was asked whether he had ever been convicted of a crime. He answered he had. He was then asked how many times. He answered "once." At the hearing on motions after verdict it was brought out that Underwood had been convicted four times, twice on separate counts of armed robbery at one trial for which he was currently incarcerated and twice at a single trial in Texas for auto theft and burglary. Underwood explained that he thought the question at the trial referred to convictions other than the one which he was then serving and the two Texas charges constituted one conviction. It is argued the failure of the prosecutor to correct this answer was reversible error.

The appellant relies mainly on *Napue v. Illinois* (1959), 360 U. S. 264, 79 Sup. Ct. 1173, 3 L. Ed. (2d) 1217; *Brady v. Maryland* (1963), 373 U. S. 83, 83 Sup. Ct. 1194, 10 L. Ed. (2d) 215; and *Powell v. Wiman* (5th Cir. 1961), 287 Fed. (2d) 275. We do not consider *Brady* and *Powell* as being applicable to these facts. They deal with the duty of a prosecutor to disclose evidence favorable to the accused whether the defense has requested the information or not and even though the alleged concealed information goes only to the credibility of a witness. This is not a case of concealment. *Napue* held a conviction obtained through the use of false evidence known to be such by the prosecutor violated due process of the Fourteenth amendment and the same result followed when the prosecution, although not soliciting false evidence, knowingly allows it to go uncorrected when it appears. This principle that the state may not knowingly use false evidence applies not only to testimony concerning the elements of the crime but also to testimony which goes only to the credibility of the witness.

In the instant case the question was not asked by the prosecution but on cross-examination by the defense. The prosecution cannot be charged with using false

testimony by allowing the answer to go unchallenged unless it can be shown that the prosecutor actually knew the answer was incorrect and allowed the uncorrected testimony to stand. There is no showing here that the prosecutor knew the witness had been convicted more than once and we do not think the prosecutor can be charged with constructive knowledge or implied knowledge or that such knowledge is sufficient for the purpose of the application of this rule. *Taylor v. United States* (8th Cir. 1956), 229 Fed. (2d) 826, certiorari denied, 351 U. S. 986, 76 Sup. Ct. 1055, 100 L. Ed. 1500.

Furthermore the misstatement was of a peculiar nature in that in this state a conviction may be proved to affect the credibility of a witness. Sec. 325.19, Stats. On this problem, see Anno. Cross-Examination—Other Prosecutions, 161 A. L. R. 233, 253. However, inquiry as to the nature of the crime is generally not permitted. *State v. Adams* (1950), 257 Wis. 433, 43 N. W. (2d) 446. For the purpose of impeachment the number of convictions may or may not be significant or material. Cf. *Bogan v. State* (1926), 191 Wis. 199, 210 N. W. 412. In the instant case we think the misstatement was not prejudicial. The explanation of Underwood seems reasonable and it does not appear he intentionally misstated the number of his convictions. We perceive no grounds for reversal.

A new trial is asked because it is claimed the jury did not know the coconspirator witness expected leniency in return for his testimony. Underwood testified at the trial he had been promised nothing in return for his testimony. This was not challenged nor was defense counsel restricted in his cross-examination on this point. Consequently, *United States v. Masino* (2d Cir. 1960), 275 Fed. (2d) 129, relied on by the appellant is not in point. At the hearing for a new trial the attack shifted from a "deal" to the "frame of mind" approach, namely, that Underwood thought he would get leniency and an

early parole if he testified. Underwood was called by the appellant and questioned concerning the making of certain statements to several convicts at Waupun. He denied such incidents. Objection was sustained to questioning these other prisoners regarding statements made to them by Underwood on the ground the defendant was impeaching his own witness. We think this evidence was properly rejected. Furthermore, since no trial error is alleged, this argument can only properly be addressed to the discretion of the court to grant a new trial in the interest of justice. We find no abuse of discretion.

During his argument to the jury the appellant's attorney inferred the prosecuting attorney had doubt in his mind as to the guilt of the appellant on the evidence. In reply, the prosecutor in his closing argument stated, "it has been ruled hundreds of times that my personal opinion has nothing to do with this case but he would infer that I have some doubt—I don't." This statement must be considered in reference to the remarks of the appellant's counsel in commenting on the lack of evidence of conspiracy. The state of mind of the attorney is not evidence nor is it proper for an attorney to indicate his belief or knowledge as to the guilt of an accused. Anno. Prosecutor—Argument—Belief in Guilt, 50 A. L. R. (2d) 766. However, an exception is made when the argument states the belief of the prosecutor is founded only upon the evidence which was heard by the jury or the idea conveyed was that the evidence convinced the speaker. *Hofer v. State* (1907), 130 Wis. 576, 583, 110 N. W. 391, 394; cf. *Fuerstenberg v. State* (1930), 201 Wis. 574, 576, 230 N. W. 628, 629; *Zeidler v. State* (1926), 189 Wis. 44, 49, 206 N. W. 872, 874. Such was the instant case.

Another exception to the rule provides that statements indicating the prosecutor's belief in the guilt of the accused may be justified when invited or provoked by counsel for the defense. Anno. Prosecutor—Argument—Belief in Guilt, 50 A. L. R. (2d) 766, 792. See *Hobbins*

*v. State* (1934), 214 Wis. 496, 517, 253 N. W. 570, 579. We think also the argument of the defense clearly invited and provoked the remark of the prosecutor and consequently the appellant cannot complain because his argument backfired.

Lastly, the appellant contends reversible error was committed when the prosecutor commented to the jury on the failure of the defense counsel to utilize prior statements of the prosecution witness to impeach him. At the conclusion of Underwood's testimony the defense counsel in the absence of the jury requested statements made by the witness prior to the trial pursuant to *State v. Richards* (1963), 21 Wis. (2d) 622, 124 N. W. (2d) 684. The request was objected to by the prosecutor unless a foundation, *i.e.,* the existence of statements, was established before the jury. Before the jury the defense counsel then established the existence of statements given by the witness to the police. They were demanded and turned over to the defense by the prosecutor in the presence of the jury. The statements were not used to cross-examine the witness.

However, on cross-examination an attempt was made to impeach him with his testimony given at the preliminary hearing. In his closing argument, the prosecutor referred to the fact that Mr. Underwood had given statements to the police and the jury saw the prosecutor present those statements to the defense attorney. The jury was told that Mr. Underwood testified at the preliminary hearing and the members saw the defendant's attorney cross-examine in regard to that hearing. The prosecutor then argued to the jury, "Now you just recall to your mind how many times the defense attorney was able to find an inconsistency."

The appellant argues this was reversible error under the rule of *Johnson v. United States* (D. C. Cir. 1965), 347 Fed. (2d) 803, but we do not deem that case controlling. In *Johnson,* the argument to jury, besides re-

ferring to the reports made, pointed out that the reports "corroborated the testimony of the police officer from the witness stand." This type of argument is improper because counsel sought to strengthen his case by reliance on the contents of the statement which were not admissible evidence for such purpose. Here, the prosecution did not attempt to bolster up the state's case by inadmissible evidence. No doubt there was an attempt to make an argument as close to the line as possible without overstepping it. But we do not think on the instant facts the argument was prejudicial.

However, we point out that *State v. Richards* provided for the production of such statements outside the hearing of the jury and if necessary for *in camera* inspection to restrict the statements for impeachment purposes. There is no requirement that the request for prior statements of prosecution witness must be made before a jury. *Richards* was quite to the contrary and should have been followed in this case. This procedure removes any basis for any inference to be drawn by the nonuse of prior statements for impeachment purposes.

It is sufficient if defense counsel outside of the presence of the jury asks for such prior statements as have been given to the prosecution without proving that statements have in fact been given. The defense need not give chapter and verse in the request. If there is a dispute over whether prior statements have been made, that fact should be tried by the court outside the presence of the jury and not before it, as was done in this case. This view of the procedure of the *Richards Case* is consistent with *Jencks v. United States* (1957), 353 U. S. 657, 668, 669, 77 Sup. Ct. 1007, 1 L. Ed. (2d) 1103, which evinces the view that justice requires the defendant initially be entitled to see prior statements of witnesses to determine what use may be made of them and should not be penalized in any form if he fails to use the statements.

*By the Court.*—The order and judgment are affirmed.