WHITTY, Plaintiff in error, v. STATE, Defendant in error. [Two cases.] *

*February 3—April 11, 1967.*

---

\* Motion for rehearing denied, without costs, on June 6, 1967.

280

For the plaintiff in error there were briefs and oral argument by *Robert H. Friebert,* public defender.

For the defendant in error the cause was argued by *Robert E. Sutton,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Hugh R. O'Connell,* district attorney.

HALLOWS, J. According to the evidence, which the jury apparently believed, Whitty on May 22, 1965, approached a group of children playing in an alley near North Thirty-sixth and West Brown streets in the city of Milwaukee. He asked the complaining witness, a girl of ten years, if she would help him find a black and white rabbit which he had lost—a nonexistent little rabbit

which reappears in the case to raise one of the important questions to be decided. The little girl removed her roller skates and followed Whitty down the alley, through a yard and into the basement of a house in search of the rabbit. While in the basement Whitty took indecent liberties with the child. The owner of the house, Robert Lutz, became aware of a noise in his basement, investigated and found the little girl who warned him of Whitty's presence and asked for his help. Lutz discovered Whitty behind a furnace, scuffled with him and knocked him down several times, but Whitty escaped up the stairs by swinging a ball-peen hammer at Lutz. Lutz' brother-in-law arrived as Whitty emerged from the rear door and gave chase with Lutz but Whitty escaped. Meantime the little girl ran to the nearby home of her aunt where her mother was visiting and reported the incident. A search was made and two days later Whitty was arrested.

A new trial is sought on the ground Whitty's constitutional right to reasonable bail and to due process was violated. Sec. 6, art. I of the Wisconsin constitution and the Eighth amendment to the United States constitution provide "Excessive bail shall not be required." Whether the Eighth amendment is directly applicable to this state criminal prosecution or is a specific provision of the Bill of Rights which is "incorporated" or "absorbed" as such by the Fourteenth amendment and applicable under the doctrine of due process, the result is the same. While the record is not entirely clear, it sufficiently appears that at Whitty's first appearance before Milwaukee County Judge F. RYAN DUFFY, JR., bail was set at $10,000 and a preliminary examination scheduled for a later date. Whitty appeared with counsel on the appointed day and bail was reduced to $1,500 in return for his waiver of the preliminary examination. Whitty now contends he was forced to purchase his right to reasonable bail and was prejudiced by the loss of the advantages of a preliminary hearing.

Whether $10,000 or $1,500 was a reasonable bail, we need not decide. An accused has a constitutional right to reasonable bail and the amount thereof should be determined solely in reference to the purpose of bail, namely, to assure the appearance of the accused when it is his duty to appear to answer the criminal prosecution. Secs. 954.36, 954.39, Stats. The fixing of bail should not be a matter of bartering or negotiating, or be conditioned upon the waiver of other rights. Nor should the denial of reasonable bail be used as a punishment or retaliation prior to conviction. Proper considerations in fixing a reasonable amount of bail which will assure the defendant's appearance for trial include the ability of the accused to give bail, the nature and gravity of the offense and the potential penalty the accused faces, the character and reputation of the accused, his health, the character and strength of the evidence, whether the accused is already under bond in other pending cases, and whether the accused has in the past forfeited bond or was a fugitive from justice at the time of arrest. Anno. Bail—Factors Fixing Amount, 72 A. L. R. 801; *Stack v. Boyle* (1951), 342 U. S. 1, 72 Sup. Ct. 1, 96 L. Ed. 3.

While we must condemn what was done in this case, it does not automatically follow that Whitty is entitled to a new trial. It is true Whitty was given the choice of reduced bail or preliminary examination and he waived his preliminary examination, but he argues this choice was inevitable because bailed defendants tend to fare better at trial than those who cannot make bail. In support of this proposition he cites Rankin, The Effect of Pretrial Detention, 39 New York University Law Review (1964), 641; Ares, Rankin & Sturz, The Manhattan Bail Project: An Interim Report on the Use of Pre-Trial Parole, 38 New York University Law Review (1963), 67, 90; Foote, The Coming Constitutional Crisis in Bail: II, 113 University of Pennsylvania Law Review (1965), 1125, 1148. While these studies are most interesting and it may be

true the greater percentage of convictions is of those defendants who cannot make bail before trial, we are not prepared to accept the thesis that prejudice to a defendant on the issue of guilt or innocence flows from pretrial incarceration.

Regardless of the reason for his choice, Whitty does not argue that if he had had a preliminary examination he would have been discharged for lack of evidence. Rather he contends he was deprived of the by-product benefits of a preliminary examination. There is no doubt a preliminary examination may be of great help to a defendant. We have recognized its by-products in *Tell v. Wolke* (1963), 21 Wis. (2d) 613, 620, 124 N. W. (2d) 655 (preliminary may serve as "adverse examination" from defendant's point of view) ; *Sparkman v. State* (1965), 27 Wis. (2d) 92, 100, 133 N. W. (2d) 776 (preliminary may help defense by permitting cross-examination of state witnesses and preserving testimony which would otherwise be lost) ; and *State v. Camara* (1965), 28 Wis. (2d) 365, 372, 373, 137 N. W. (2d) 1 (preliminary examination serves as a discovery device for defendant). These incidental fringe benefits, however, are not the real purpose of a preliminary examination, which is intended "to protect the accused from hasty, improvident, or malicious prosecution and to discover whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty." *Johns v. State* (1961), 14 Wis. (2d) 119, 122, 109 N. W. (2d) 490.

Whitty admits it is impossible in this case to show actual prejudice, but he argues that when a basic constitutional right is violated it is sufficient if a reasonable probability of prejudice exists, and relies on *United States v. Wilkins* (2d Cir. 1965), 348 Fed. (2d) 844, 864. Several years ago this court adopted the harmless-error rule for violations of constitutional rights in criminal cases. *Pulaski v. State* (1964), 24 Wis. (2d) 450, 456, 129 N. W. (2d) 204. In that case we stated not all violations of con-

stitutional rights require reversal, relying on our "substantial rights statute," sec. 274.37, Stats.,[1] and on *Fahy v. Connecticut* (1963), 375 U. S. 85, 86, 84 Sup. Ct. 229, 234, 11 L. Ed. (2d) 171, 177, where it was said there must be a showing of reasonable possibility of prejudice arising out of an alleged error, except in those cases of constitutional rights so basic to a fair trial that their violations were conclusively presumed to be prejudicial or not harmless error.

The United States supreme court recently addressed itself to this problem in *Chapman v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. (2d) 705. In the *Chapman Case* the court pointed out that in cases involving coerced confessions, the denial of counsel at trial, the denial of counsel at a critical stage before trial, an impartial judge, or trial in a community exposed to highly adverse publicity concerning the alleged crime of the defendant, a showing of specific harm on the part of the accused is not required. But in these cases the errors go to, or directly affect, the fact-finding process of determining guilt or innocence. The court acknowledges in *Chapman* the harmless-error rule might appropriately be applied to other constitutional violations on a case-to-case examination to evaluate the effect of the error upon the entire proceeding. It is not to be assumed that every constitutional error because it is a constitutional error automatically is prejudicial and the federal harmless-error rule must be applied by the states to violations of federal constitutional rights. This federal rule, to the

---

[1] "274.37 **Judgments; application to reverse or set aside; new trial; reversible errors.** No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

extent it has emerged, in terms of possible-probable prejudice of substantial rights is in substance the harmless-error rule we adopted in *Pulaski*. In *Chapman* the rule is stated in terms of certitude: ". . . before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U. S. 18. In addition, the prosecution has the burden of showing a constitutional error was harmless beyond a reasonable doubt rather than the accused the burden of showing it was prejudicial.

While the denial of a preliminary hearing is not *per se* a breach of a constitutional right, *State v. Strickland* (1965), 27 Wis. (2d) 623, 135 N. W. (2d) 295, nevertheless in the context of this case Whitty's constitutional right to reasonable bail was violated. Such constitutional violation is subject to the harmless-error rule because it did not occur during trial of the issue of guilt or innocence and did not directly affect that issue. We believe the error was harmless beyond a reasonable doubt on the issue of Whitty's guilt or innocence.

Whitty further contends he is entitled to a new trial because of prejudicial error in the failure of the trial court *sua sponte* to instruct the jury to disregard certain foundation testimony of a witness. Two days after the incident in the basement Whitty was brought to the Milwaukee county safety building under an arrest invalid under the rule of *State ex rel. White v. Simpson* (1965), 28 Wis. (2d) 590, 137 N. W. (2d) 391, which requires a warrant to be issued by an independent and impartial magistrate. The mother of the molested child testified she and her daughter were sitting outside the vice squad office in the safety building when Whitty came off of the elevator and into their presence. The district attorney inquired, "What did your daughter say when he stepped off of the elevator?" An objection was made to this question and sustained. No further question was asked and the witness was excused. No motion was

made to strike the preliminary testimony or to instruct the jury to disregard it. Whitty now argues the foundation testimony was prejudicial because it informed the jury Whitty was a prime suspect and had been arrested only two days after the offense.

This court has not looked with favor upon claims of prejudicial error based upon the trial court's failure to act when no action was requested by counsel. *Kink v. Combs* (1965), 28 Wis. (2d) 65, 72, 135 N. W. (2d) 789; *State v. Yancey* (1966), 32 Wis. (2d) 104, 112, 145 N. W. (2d) 145. In *State v. Lombardi* (1959), 8 Wis. (2d) 421, 440, 99 N. W. (2d) 829, this court said that even if testimony is successfully objected to it is necessary that a motion to instruct the jury to disregard it be made. Such a motion would *a fortiori* be necessary when, as here, the foundation questions were not objected to. The primary duty of trying a lawsuit is upon trial counsel, not the trial judge. We find no error in the trial court's failure *sua sponte* to instruct the jury to disregard this foundation testimony.

Whitty's third argument for a new trial concerns prejudicial error in the reappearance of the little black and white rabbit in this case. At the conclusion of Whitty's direct testimony he denied having talked about a rabbit to anyone on the day previous to the attack with which he was charged or at any other time. On cross-examination he denied he had ever talked to any little girl about a rabbit. He denied he had been in an alley near North Forty-fourth street about 7 o'clock the evening of May 21st (the evening before the alleged crime was committed upon the prosecuting witness), that he approached an eight-year-old girl and told her he was looking for a black and white rabbit, that he took this little girl into a basement and was about to take indecent liberties with her when he was frightened by the sound of a vacuum cleaner being turned off on the first floor and fled.

After Whitty had put in his alibi defense and had rested his case, the state called the eight-year-old girl as a rebuttal witness. She testified that Whitty was the man who on the evening of May 21st approached her while she was playing in an alley near her home on North Forty-fourth street and took her into the basement of her home to look for a rabbit. She testified to the occurrence of other details of the incident which had been denied by Whitty. The trial court admitted this evidence and repeatedly admonished the jury it was not to be considered proof of Whitty's guilt of the offense for which he was charged but was admitted solely for the purpose of identification since his identity under the alibi defense was at issue.

Whitty contends this evidence was prejudicial, confused the jury, unfairly surprised him, and this court should adopt the concurring opinion in *State v. Reynolds* (1965), 28 Wis. (2d) 350, 137 N. W. (2d) 14, and adopt a rule that prior-crime evidence is inadmissible unless either the accused has been convicted of the prior misconduct or admits it. In addition, Whitty argues the use of this evidence was so unfair and prejudicial upon the issue of his guilt or innocence as to deprive him of a fair trial and thus offend the due-process clause of the Fourteenth amendment.

Such a basic defense requires an examination of the fundamental rules underlying the admissibility of prior-crime evidence. It is a maxim in our jurisprudence that all facts having rational or logical probative value are admissible in evidence unless excluded by some specific rule. 1 Wigmore, Evidence (3d ed.), p. 293, sec. 10. Likewise, the "character rule" is universally established that evidence of prior crimes is not admitted in evidence for the purpose of proving general character, criminal propensity or general disposition on the issue of guilt or innocence because such evidence, while having proba-

tive value, is not legally or logically relevant to the crime charged. Indeed, Wigmore states such evidence is "objectionable, not because it has no appreciable probative value, but because it has too much." (P. 646, sec. 194.)

The character rule excluding prior-crimes evidence as it relates to the guilt issue rests on four bases: (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes. Whitty argues the admitted evidence of the previous attempted molestation violated all four of these reasons for exclusion, but it is to be noted these reasons for the character rule have not been generally applied to other-crime evidence admitted for a limited purpose as exceptions to that rule.

Under the multiple-admissibility rule, evidence inadmissible for one purpose may be admissible as probative for another purpose. As well established as the complex exclusionary rule concerning evidence of prior offenses is the rule that evidence of prior crimes is admissible when such evidence is particularly probative in showing elements of the specific crime charged, intent, identity, system of criminal activity, to impeach credibility, and to show character in cases where character is put in issue by the defendant. The admission of evidence of prior crimes for such purposes is not forbidden because such evidence would not be admissible under the general character rule.

Over sixty years ago this court in *Paulson v. State* (1903), 118 Wis. 89, 98, 94 N. W. 771, pointed out and explained the rule that the evidence against an accused should be confined to the very offense charged and neither

general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him. The exceptions pointed out were all based upon relevancy and probative value.

The law of Wisconsin is in accord with these general principles. Although we recognize the universal "character rule" against the admission of evidence of prior misconduct as bearing on the issue of guilt, *Fossdahl v. State* (1895), 89 Wis. 482, 62 N. W. 185; *State v. Stevens* (1965), 26 Wis. (2d) 451, 132 N. W. (2d) 502, we have permitted such evidence for the limited purpose of showing intent, *Herde v. State* (1941), 236 Wis. 408, 295 N. W. 684; an element of the crime, *Kluck v. State* (1937), 223 Wis. 381, 269 N. W. 683; *State v. Meating* (1930), 202 Wis. 47, 231 N. W. 263; identity, *Herde v. State, supra, State v. Stevens, supra, Bridges v. State* (1945), 247 Wis. 350, 19 N. W. (2d) 529, 19 N. W. (2d) 862; and a system of activity, *Smith v. State* (1928), 195 Wis. 555, 218 N. W. 822, *Dietz v. State* (1912), 149 Wis. 462, 136 N. W. 166. Also, prior criminal convictions are admissible as affecting a defendant's credibility under the provisions of sec. 885.19, Stats. In *State v. Jackson* (1935), 219 Wis. 13, 261 N. W. 732, evidence of prior liquor sales by defendant to the state witness was held inadmissible. While the evidence had relevancy to show intent, intent was not an element of the crime and thus the evidence had no probative value other than to prove general disposition to commit the act.

It is not necessary that prior-crime evidence be in the form of a conviction; evidence of the incident, crime or occurrence is sufficient. In *Stevens* and *Bridges* evidence of prior acts not resulting in a conviction was permitted. In *State v. Lombardi* (1959), 8 Wis. (2d) 421, 438, 99 N. W. (2d) 829, this court spoke not of crimes but of "other occurrences" in which the defendant had participated. The language "other occurrences" was used in the majority opinion in *State v. Reynolds, supra.* We are

asked to adopt the concurring opinion in *Reynolds* but we decline to do so. We think the admissibility of prior-crime evidence does not depend upon admission or conviction for prior criminal conduct but upon its probative value which depends in part upon its nearness in time, place and circumstances to the alleged crime or element sought to be proved.

We think the standards of relevancy should be stricter when prior-crime evidence is used to prove identity or the doing of the act charged than when the evidence is offered on the issue of knowledge, intent or other state of mind. McCormick, Evidence (hornbook series), p. 331, sec. 157. In identity cases the prejudice is apt to be relatively greater than the probative value. However, we cannot say that all evidence admitted under the multiadmissibility rule to prove identity, intent, knowledge or other element of the crime is *per se* so prejudicial on the issue of guilt or innocence as to require its exclusion.

We recognize some juries might be confused by evidence having little probative value, that the defense might be surprised, and that the collateral effect of other-crime evidence might be fatal prejudice on the issue of guilt although proper instructions to the jury regarding the use of the evidence are given. But, we think the answer lies in the adoption of Rule 303 of the American Law Institute Model Code of Evidence. This rule balances relevancy against prejudice and provides:

"Rule 303. DISCRETION OF JUDGE TO EXCLUDE ADMISSIBLE EVIDENCE.

" (1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

" (a) necessitate undue consumption of time, or

" (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or

" (c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

On the instant facts we do not believe the evidence of the little black and white rabbit incident admitted for identity purposes created undue prejudice, confused the issues, misled the jury or unfairly surprised Whitty as to require its rejection. Under the rule which we adopt, the trial court will be required in order to assure a fair trial to an accused to carefully consider whether the prejudice of other-crimes evidence is so great as compared with its relevancy and the necessity for its admission in the particular case as to require its exclusion. This rule is based upon the premise the accused is entitled to a procedurally and evidentially fair trial without making it impossible for the state to prosecute.

This balancing of relevance and prejudice of prior-crime evidence was considered in two cases while this case was under consideration. In the recent case of *Spencer v. Texas* (1967), 385 U. S. 554, 87 Sup. Ct. 648, 17 L. Ed. (2d) 606, an analogous issue was considered. The question there presented was whether the use of prior convictions admitted on the penalty issue was so unfair on the issue of guilt or innocence as to violate the Fourteenth amendment. Under the then Texas practice the jury heard evidence of prior convictions in order to consider the penalty under a habitual criminal statute. The court, while recognizing the prejudicial effect of the evidence, nevertheless was not prepared to hold the federal court has a duty to make rules of evidence for the states under the Fourteenth amendment. As recently as last month the third circuit court of appeals in *Ross v. Maroney* (3d Cir. 1967), 372 Fed. (2d) 53, held evidence that the accused committed another homicide shortly before he committed the homicide for which he was being tried was relevant on the issue of premeditated intent and was not so prejudicial that it outweighed the probative value for such purpose or affected the fairness of the trial. The court reviewed the cases of *Lisenba v. California* (1941), 314 U. S. 219, 62 Sup. Ct. 280, 86 L. Ed. 166; *Ciucci v. Illi-*

*nois* (1958), 356 U. S. 571, 78 Sup. Ct. 839, 2 L. Ed. (2d) 983; *United States ex rel. Scoleri v. Banmiller* (3d Cir. 1962), 310 Fed. (2d) 720; *United States ex rel. Lowry v. Myers* (3d Cir. 1966), 364 Fed. (2d) 297. *Lisenba* recognized the principle that similar but disconnected acts may be shown to establish intent, identity, design and system and the Fourteenth amendment leaves the states free to adopt a rule of relevance for such evidence. In *Ciucci* the court stated that a state was constitutionally entitled to prosecute criminal offenses singly at separate trials and to utilize therein all relevant evidence in the absence of proof establishing that such course of action entailed fundamental unfairness. In the *Scoleri* and *Lowry Cases* the evidence offered was not relevant to the issue of guilt but went to the issue of fixing the penalty and in this respect they are like the cases involving repeater statutes. In both those cases the court found the admissibility of such evidence for that purpose was so prejudicial on the guilt issue as to offend due process and fundamental fairness of trial. See *United States v. Reed* (1967), 376 Fed. (2d) 226 (use of prison "mug shot" of accused for identification held prejudicial).

We have been asked to consider this problem in the light of *State v. Spreigl* (1965), 272 Minn. 488, 139 N. W. (2d) 167, but we do not think *Spreigl* gives a complete answer. In that case the defendant was charged with taking indecent liberties with his eleven-year-old stepdaughter. The child testified that during the year preceding the offense other similar criminal acts had occurred. Evidence was also admitted of similar acts with another stepdaughter and a stepson. After reviewing the "delicately balanced and conflicting considerations in receiving prior related misconduct," the Minnesota court held that when the state seeks to prove an accused has been guilty of prior crimes or misconduct, although such evidence is

admissible under an exception to the general exclusionary rules, it would not be received unless within a reasonable time before trial the state furnishes the defendant a written statement of the prior offense it intended to show he has committed, described with the particularity required of an indictment or information. This rule, however, was made subject to the following exceptions: (a) Offenses for which defendant is being tried; (b) offenses for which defendant has previously been prosecuted; and (c) offenses which are introduced to rebut defendant's evidence of good character. 272 Minn. at 497, 139 N. W. (2d) at 173. While this rule may eliminate the surprise on the part of an accused, it does little to eliminate any confusion of issues, misleading of the jury, or undue prejudice.

Evidence of prior crimes or occurrences should be sparingly used by the prosecution and only when reasonably necessary. Piling on such evidence as a final "kick at the cat" when sufficient evidence is already in the record runs the danger, if such evidence is admitted, of violating the defendant's right to a fair trial because of its needless prejudicial effect on the issue of guilt or innocence. The use of such evidence under the adopted rule will normally be a calculated risk.

Whitty makes two contentions which we deem to be without merit and not requiring extended discussion. He claims the evidence is insufficient to sustain the conviction and he also asks for a new trial in the interests of justice. Whitty claims his proof of the alibi defense created a standoff to the evidence of the state and argues from this premise the jury could not be convinced beyond a reasonable doubt of Whitty's guilt. But the simple answer is the jury did not believe Whitty and it was within the jury's province not to believe. And we think it acted reasonably and its finding therefore should not be disturbed. *Galloway v. State* (1966), 32 Wis. (2d) 414, 421, 145 N. W. (2d) 761, 147 N. W. (2d) 542. Incidental-

ly, the standoff argument is what the trial judge was concerned about when he eloquently stated to the jury after it returned the verdict of guilty, "The putrid air of perjury emanating from the defendant's testimony as he sat on this witness chair, was, figuratively, nauseating, and I was fearful that the acrid stench of falsehood might permeate into the sacred and secret confines of the jury room, . . ." In respect to a new trial in the interests of justice this court is not convinced that defendant should not have been found guilty, and without such conviction we can hardly hold that justice has been miscarried. *Lock v. State* (1966), 31 Wis. (2d) 110, 142 N. W. (2d) 183; *Holloway v. State* (1966), 32 Wis. (2d) 559, 571, 146 N. W. (2d) 441.

On the writ of error to review the order denying the motion to vacate the commitment as a sex deviate, Whitty argues he is entitled to contest the presentence report of his examination by the department of public welfare. In *Huebner v. State* (1967), 33 Wis. (2d) 505, 147 N. W. (2d) 646, we held that one convicted of a sex crime and who was the subject of a presentence report by the department of public welfare recommending specialized treatment was entitled under the due-process clause to a full-fledged hearing on such report and to a finding by the trial court, based on the evidence submitted, whether or not he needed psychiatric and medical treatment as a sex deviate. *Huebner* was decided after Whitty's motion was denied by the trial court, but Whitty properly raised this question and preserved it for review and is thus entitled to the benefit of *Huebner*. The state has confessed error and agrees that under *Huebner* this case should go back for such a hearing.

*By the Court.*—The judgment of conviction and that part of the order denying a new trial is affirmed; the commitment to the department of public welfare for specialized treatment and that part of the order denying

the vacation of the commitment are reversed. The case is remanded for a hearing upon the presentence report consistent with our decision in *Huebner v. State;* Whitty to remain in the custody of the department of public welfare pending such hearing.

HANSEN, J., took no part.