PRICE, Plaintiff in error, v. STATE, Defendant in error.

*November 3—November 28, 1967.*

118

120

For the plaintiff in error there was a brief and oral argument by *Robert H. Friebert,* public defender.

For the defendant in error the cause was argued by *E. Michael McCann,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

HEFFERNAN, J.

*Did the conduct of the prosecutor in calling the*
*witness to the stand, though he knew that*
*the fifth amendment would be invoked,*
*constitute prejudicial error*
*warranting a new trial?*

Rogers, McLaughlin, and the defendant herein, Price, were all codefendants, but a motion for severance and separate trial was granted. Both Rogers and McLaughlin testified at the preliminary examination. Shortly before the trial began, apparently on the very morning of trial, McLaughlin's attorney told the prosecutor that his client would invoke his fifth-amendment privilege and refuse to testify. Shortly after the reading of the information, the jury was excused and, out of the presence of the jury, the court was advised that Rogers was willing to testify on behalf of the state.

The judge ascertained that Rogers was waiving his right against self-incrimination after being advised by counsel. The judge also advised Rogers that he need not testify and, if he did so, that such testimony might be used against him. Rogers elected to testify.

Upon the jury's return, the trial commenced with testimony by an employee of Tel-Air that tended to prove

that the premises had been burglarized. At this juncture, McLaughlin, who, by the reading of the information to the jury, had been identified as a codefendant, was called. Upon being asked his name, he answered; but, on fifth-amendment grounds, he refused to state whether he knew the accused. When asked whether he would make that response to every question asked, he responded in the affirmative. The district attorney thereupon ceased further questioning.

The trial judge, by ordering the clerk to read the judgment roll, then ascertained that McLaughlin had been subpoenaed to appear and give testimony in the Price trial. He allowed McLaughlin to leave the courtroom but ordered him to return at two o'clock in the afternoon.

The state then called Rogers, who again was advised of his constitutional rights, this time in the presence of the jury. He again stated that upon advice of counsel he was willing to testify. His testimony, as set forth above, tended to prove that Price helped to plan the robbery and in fact made the burglarious entry.

Defendant relies on a recent case of this court, *State v. Yancey* (1966), 32 Wis. 2d 104, 145 N. W. 2d 145, for the proposition that calling a witness who the state knows will refuse to testify is ipso facto prosecutorial misconduct of such a nature that a new trial is mandatory.

Arguably, certain statements in *Yancey*, if taken out of context, could lead to that conclusion. We said therein:

"The appellant relies particularly on *San Fratello v. United States* (5th Cir. 1965), 340 Fed. (2d) 560; *United States v. Maloney* (2d Cir. 1959), 262 Fed. (2d) 535; *Fletcher v. United States* (D. C. Cir. 1964), 332 Fed. (2d) 724. Each of these cases, however, involve a prosecutor calling a witness whom he knew would invoke his privilege. In *San Fratello,* the witness had claimed her privilege in a previous trial and had advised the prosecutor she would again assert it. In *Maloney,* the prosecu-

tion conceded it knew or anticipated two of its key witnesses would invoke the privilege against self-incrimination. In *Fletcher* the court permitted detailed questions to be asked concerning the witness' relationship to the defendant after the witness claimed the privilege. *The conduct of the prosecutor in these cases amounted to deliberate misconduct which denied the accused a fair trial.*" (Emphasis supplied.) (*Yancey, supra,* p. 110.)

It should be noted, however, that in each of the cases cited therein the controlling factor was not that the prosecution called the witness to the stand, but rather that it put questions to the witness which if not answered lead to the inference that the answers if given would be unfavorable to the accused. The vice of this, of course, is that an inference or presumed answer that is based on nontestimony is not under oath and, more importantly, cannot be tested by cross-examination.

In *San Fratello* the court of appeals dwelt upon the inferences to be drawn from the fact that the wife of the accused "took the fifth" as to her marital status and questions relating to her picking up photographs that purportedly were used in "casing" the scene of the crime. In *Maloney* Judge LEARNED HAND points out that specific and relevant questions were asked which the jury could presume, in view of the exercise of the privilege, would have been answered unfavorably to the accused. (Moreover, the express holding of *Maloney* was based on the failure to properly admonish the jury.) In *Fletcher,* the witness claiming the privilege was questioned *in extenso* to the point that Judge PRETTYMAN pointed out that the prosecutor asked a series of questions which depicted the alleged offense in its entirety.

It is apparent that the cases upon which *Yancey* is based do not stand for the proposition that the defendant herein claims. An analysis of each case demonstrates that specific inferences were generated by the prosecutor's questions, and in addition these inferences were

unfairly exploited subsequently by the prosecution. In *Yancey* we quoted *United States v. Compton* (6th Cir. 1966), 365 Fed. 2d 1, for the proposition that the prosecution need not refrain from calling a witness merely because his attorney appears and advises counsel that the privilege will be claimed. That same case pointed out that:

"It is an unfair trial tactic if it appears that counsel calls such a witness merely to get him to claim his privilege before the jury to a *series of questions* not pertinent to the issues on trial or not admissible under applicable rules of evidence." (Emphasis supplied.) *Compton, supra,* page 5.

The rule of *Compton* is in accord with accepted rules of evidence that no error is committed by the mere fact of calling a witness who will claim the privilege. *See* 8 Wigmore, *Evidence* (McNaughton Rev.), p. 402, sec. 2268; McCormick, *Evidence* (hornbook series), p. 257, sec. 122, and p. 281, sec. 133. We therefore reject the defendant's contention that calling of a witness who would assert his privilege constituted evidentiary error warranting a reversal.

*Yancey* correctly interpreted *Namet v. United States* (1963), 373 U. S. 179, 83 Sup. Ct. 1151, 10 L. Ed. 2d 278, in concluding that reversals were warranted in the event of prosecutorial "misconduct" or on a finding that the failure of a witness to testify added "critical weight" to the prosecutor's case.

As set forth above we do not conclude that the mere calling of a privileged witness amounts to misconduct. The defendant, however, asks us to contrast the handling of Rogers, who turned state's evidence, with the handling of McLaughlin, who stood on his privilege. Rogers was treated differently. The jury was dismissed when he was advised of his rights, but McLaughlin was obliged to assert his rights in the presence of the jury. Had the

state made an effort to exploit this difference, *i.e.,* the ready willingness of Rogers to "spill the beans," as contrasted to McLaughlin's adherence to his privilege, we might well hold that the conduct was misconduct. A careful perusal of the record reveals no instance following McLaughlin's claiming of the privilege that the prosecution ever alluded to his testimony. At no time did the prosecution ever contrast Rogers with McLaughlin or intimate that, had McLaughlin testified, his testimony would have been unfavorable to Price. In short, while the prosecution made the most of the fact that Rogers' testimony should be regarded as highly credible since he implicated himself, it at no time used the McLaughlin appearance to add "critical weight" to the Rogers testimony. Had McLaughlin been asked the same series of questions that were put to Rogers, the jury could have inferred from the witness' refusal to answer that the answer, if given, would be unfavorable. But those questions were not asked. True, McLaughlin did refuse to testify as to whether he knew the defendant, but the fact that he and Price were "associates" was revealed by Price and did not need to be derived from an inference. No additional inferences could possibly be drawn from McLaughlin's refusals that added "critical weight" to the state's case.

*Namet* makes it clear that the forbidden conduct is the *"conscious and flagrant* attempt to build its case out of inferences arising from use of the testimonial privilege." (Emphasis supplied.) *Namet, supra,* page 186. It emphasizes that, in addition, the conduct be planned and deliberate.

These elements of prosecutorial conduct proscribed by *Namet* are totally lacking in the instant case. As we said in *Yancey, supra,* page 111, the record reveals no " 'planned or deliberate attempts by the government to make capital out of' the witness' refusal to testify or to 'build its case out of inferences arising from use of the

testimonial privilege.' " It is sheer speculation and conjecture to conclude that the jury could draw any inferences damaging to Price from the innocuous questions asked of McLaughlin.

We conclude the defendant's allegation of an additional count of prosecutorial misconduct to be equally ephemeral. A police officer who took Price, McLaughlin, and Rogers into custody was questioned. The following exchange took place during direct examination by the prosecutor:

> "Q. Now would you relate what statements, if any, were made and by whom at that time?
> "A. McLaughlin stated in the presence—
> > "Mr. Weiner: I object to any statements made by McLaughlin, your honor. He is charged as a co-conspirator in this matter. The State is trying to get in the back door what they could not do directly by putting the man on the stand."

The objection was sustained by the court.

Appellant's counsel contends that the state's tactic in asking the question placed trial counsel in a dilemma, either to allow hearsay to go in the record or to object and leave the inference that the answer would be unfavorable. This is, of course, the constant dilemma of trial counsel. Here, the first horn of the dilemma was eliminated by the trial court's upholding the objection— and, of course, we do not know that the statement the prosecution was about to attribute to McLaughlin was damaging to Price, or for that matter even hearsay. Moreover, granting *arguendo,* some inference could arise in the minds of the jury—the inference that something unfavorable to Price was said by McLaughlin—that inference is so conjectural that it could not add "critical weight." "Critical weight" as used in *Yancey* and *Namet* means decisive weight—the evidentiary inference that tips the scales of justice from innocence to guilt. None

of the alleged evidentiary errors, either individually or in the aggregate, attain such dignity. These vague inferences pale into insignificance when compared to the direct and damaging and credible evidence of Rogers and the admissions of the defendant of complete knowledge, other than the actual entry, of all the circumstances of the burglary and his admitted propinquity to the scene of the crime.[1]

*Should the trial judge sua sponte, have instructed*
*the jury that no inferences of guilt were to be*
*drawn from the witness' refusal?*

At no time did the trial counsel either object to placing McLaughlin on the stand or to the questions put to him. Moreover, at no time did counsel ask for cautionary instructions advising the jury that no inference of guilt could be drawn from the witness' refusal to answer. Defendant now claims that the judge *sua sponte* should have given such instructions. We recently, in *Yancey, supra*, page 112, determined that:

"If the defense counsel considers the conduct of the prosecutor objectionable or the claim of privilege prejudicial, he may object and ask for cautionary instructions at that time or he may request instructions on the subject in the judge's charge to the jury."

In the instant case trial counsel took neither course of action. Nor can we conclude that such action was ap-

---

[1] Defendant also alleges that the conduct of the trial judge in reading the judgment roll showing that McLaughlin was a subpoenaed witness also added critical weight to the prosecutor's case. While we conclude that the conduct of the judge was unnecessary, since it appears that the witness should have been released from his subpoena in any event once he had claimed his privilege, we cannot conclude that the result of the judge's conduct, the showing that the witness was subpoenaed, added an impermissible inference to the state's case.

propriate, for we see no evidence of prejudicial error and, in any event, as we pointed out in *Yancey*, whether to object and ask for such instructions is essentially a matter of trial strategy. For this reason *Yancey* determined that, even though there appeared to be the possibility of an evidentiary error, the trial court should not *sua sponte* offer a cautionary instruction. As Judge LEARNED HAND stated in *Maloney, supra*, page 538, ". . . it is doubtful whether such admonitions are not as likely to prejudice the interest of the accused as to help them." Judge HINCKS in the dissent to the same case pointed out that had the admonition:

". . . been given without request, quite possibly on appeal the complaint would have been either that the judge was in cahoots with the prosecutor to bring about an unjust conviction or that he was a blundering fellow who inadvertently compounded prejudice by his good intentions." *Maloney, supra*, page 539.

Nor do we believe that a trial court should, as defendant proposes, paternalistically suggest such admonitory instructions. We believe the use of such instruction is a matter for the judgment of trial counsel. To urge or even offer the instruction might in the ordinary case be a usurpation of the function of counsel. Nevertheless, we can conclude that the battle might be so unequal due to the disparity of the skill of counsel that justice would require, in the unusual case, that such instructions be offered for counsel's consideration. Such factors are not pertinent to this case.

*Did the trial court err in admitting defendant's threat to kill a witness who was about to testify against him?*

Rogers testified that shortly before the trial began, Price, who was in the "bull pen" with him, stated, "If it takes me thirty years, I will kill you." Defense counsel objected; and when the statement was received in evi-

dence, he moved for a mistrial. Appeal counsel contends that, in any event, a threat is an ambiguous act and is not truly probative of guilt. While it may be conceded that a threat is not by any means an unequivocal evidence of guilt, it long has been accepted as having evidentiary value. In 1 Wharton's, *Criminal Evidence* (12th ed.), p. 429, sec. 208, it is stated:

"It is relevant to show that the defendant threatened witnesses with violence if they identified the defendant as the guilty man, did not conceal their knowledge of the defendant's guilt, or if they appeared at the trial of the defendant."

McCormick, *Evidence* (hornbook series), p. 330, sec. 157, states that "evidence of criminal acts of the accused, constituting admissions by conduct, intended to obstruct justice or avoid punishment for the present crime" are admissible in evidence. They are in the classification of events that have probative value that is relevant to the crime that is under inquiry. In general, however, evidence of prior crimes is suspect and objectionable because it focuses the attention of the jury on the character of the accused rather than upon the facts of the crime. It tends to prove that the accused is a "bad man." The rule that limits the admission of prior-crime evidence was thoroughly discussed in the recent case of *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557. The essence of that case was a rule of reason that:

". . . the admissibility of prior-crime evidence does not depend upon admission or conviction for prior criminal conduct but upon its probative value which depends in part upon its nearness in time, place and circumstances . . . sought to be proved." *Whitty, supra,* page 294.

We also pointed out therein that the subject matter of the rule is not limited to crimes but also includes "other occurrences." We need not therefore concern ourselves with defendant's insistence that the threat must be treated as a crime under the statutes. What the event is called is immaterial. It is a question not of nomenclature,

but of probative value balanced against possible prejudicial effect. The attempt to hinder or threaten a witness to a crime is an occurrence that has relatively high probative value. McCormick says:

"As might be expected, wrongdoing by the party in connection with his case, amounting to an obstruction of justice may likewise be proven against him as an admission by conduct . . . . Accordingly . . . his undue pressure, by bribery or intimidation or other means, to influence a witness to testify for him or to avoid testifying, his destruction of relevant documents, his attempt to corrupt the jury, his hiding or transferring property . . . all these are . . . admissions by conduct." McCormick, *Evidence* (hornbook series), p. 537, sec. 250.

The threat is circumstantial evidence of consciousness of guilt and, hence, of guilt itself. It is obvious that such evidence is not conclusive and may be subject to ambiguous inferences and interpretations.

". . but the accepted technique is for the judge to receive the evidence, and permit the defendant to bring in evidence in denial or explanation." McCormick, *supra,* p. 533, sec. 248.

Defendant herein contends that the threat could just as well have been the product of an innocent man's outrage at being framed by a perjurer. That may well be, but this explanation was not put forth at trial nor argued to the jury and appears to have had its genesis in what counsel for the state refers to as appeal counsel's "partisan intellectual creativity." Defendant was at liberty to counter the implications of the evidence, and he did so by his denial and in oral arguments of counsel. The jury chose not to believe him.

Counsel for the appellant also urges that we apply the principles of Rule 303 [2] of the Model Code of Evidence

---

[2] Rule 303 provides:

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its

adopted by this court in *Whitty* and more recently applied in *State v. Smith* (1967), 36 Wis. 2d 584, 153 N. W. 2d 538. He contends that under that rule the prejudicial effect of the evidence outweighs its probativeness; hence, it should be excluded.

However the rule (303) leaves that decision to the trial judge, and while we concur in appellant's contention that threat evidence is not crystal clear in its interpretation, we cannot say that the evidence of the occurrence herein was of so little probative value as contrasted to its possible prejudicial effect that the trial judge abused his discretion in letting it in.

The threat was made only shortly before the testimony of Rogers, and it would appear to be directly related to the fact that Rogers was about to testify against him. It was not evidence of general bad character; it was evidence directly related to the crime charged. It was an occurrence that tended to show Price's attempt to suppress evidence of his guilt and was therefore of probative value.

Appellant also contends that the testimony of the threat, at the last minute, constituted unfair surprise. As pointed out in *Whitty,* Rule 303 leaves this factor also to the discretion of the trial judge. We see no evidence that the trial judge abused his discretion in this respect.[3]

---

admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered.

"(2) All Rules stating evidence to be admissible are subject to this Rule unless the contrary is expressly stated."

[3] Counsel also urges that the failure to give notice of this additional evidence is a denial of due process. He cites *Giles v. Maryland* (1967), 386 U. S. 66, 87 Sup. Ct. 793, 17 L. Ed. 2d 737; *Miller v. Pate* (1967), 386 U. S. 1, 87 Sup. Ct. 785, 17 L. Ed. 2d

### Is the defendant entitled to a new trial on the basis of newly discovered evidence?

Appellant claims that just prior to the commencement of oral argument he learned that another prisoner had been in the "bull pen" when Rogers allegedly had been threatened by Price, but was prepared to testify that no such threat was made. The matter was discussed with counsel, but no attempt was made to re-open the case for the taking of this additional testimony. Under these circumstances the question cannot now be raised for the first time. In *Lock v. State* (1966), 31 Wis. 2d 110, 117, 142 N. W. 2d 183, we pointed out that the newly discovered evidence must have come to the parties' knowledge *after* trial. Here it was apparent that the facts were known during trial and were not presented to the court and jury. *State v. Clarke* (1967), 36 Wis. 2d 263, 153 N. W. 2d 61. Moreover, the evidence is not of such a nature as to make it reasonably probable that a different result would be reached on a new trial. *Lock, supra,* page 117. There was adequate additional proof of guilt.

### Improprieties during closing argument.

Defendant urges this court to grant a new trial because certain allegedly prejudicial statements were made by the prosecution during closing argument. Without reaching the merits of this question, the argument must be rejected because it is clear that trial counsel did not object at any time to the statements of the prosecutor, nor did he move

690; *Brady v. Maryland* (1963), 373 U. S. 83, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215; and *Napue v. Illinois* (1959), 360 U. S. 264, 79 Sup. Ct. 1173, 3 L. Ed. 2d 1217. These, however, stand not for the proposition that appellant urges—that notice must be given of any inculpatory evidence—but rather that the government is obligated to reveal any evidence that tends to prove the innocence of the accused.

for a mistrial during or at the close of the argument. In *State v. Christopherson* (1967), 36 Wis. 2d 574, 153 N. W. 2d 631 (October 31, 1967), defendant made a similar argument. The court summarily rejected the contention:

"It is argued it was error for the court to omit noting defendant's objections to these statements.

"It is not necessary to pursue this contention in view of this court's decision in *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. 2d 249, 256, 137 N. W. 2d 6, where it was held that failure to move for a mistrial before the jury returned its verdict constituted waiver of complaints of impropriety with respect to closing argument by the adverse party's counsel. Whether the objections, rulings thereon, or the closing arguments were recorded is of no consequence since defendant is foreclosed from raising alleged improper and prejudicial argument as grounds for reversal in view of her failure to move for a mistrial before the verdict was rendered."

### Severity of sentence.

Appeal counsel for defendant, finally, urges this court to reduce the sentence imposed on Price. He was given nine years on a possible ten-year term, the sentence to run consecutively with a seven-year sentence for parole violation. It has been the policy of this court, except in unusual cases, to defer to the judgment of the trial court in reviewing sentences. *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9; *Jung v. State* (1966), 32 Wis. 2d 541, 145 N. W. 2d 684; *Nelson v. State* (1967), 35 Wis. 2d 797, 151 N. W. 2d 694. The record establishes the fact that defendant was on parole when he committed the burglary on January 24, 1966, although we are given no indication of the nature of the prior conviction. Indeed, a mere twelve days had elapsed from the time defendant was released from the Green Bay Reformatory and the date of the burglary. The trial judge may have concluded that a substantial sentence was warranted in light of defendant's prompt violation of parole.

The gist of defendant's argument that the sentence should be reduced appears to stem from the fact that Rogers, who participated in the crime and whose testimony was instrumental in convicting the defendant, received probation for the same offense while the defendant received nine years. We are given no indication from the transcript why the trial court meted out substantially different sentences. The prosecutor urged imposition of the maximum sentence because of the alleged threat made on Rogers' life and in view of defendant's past record. Again, the record does not reflect whether the threat was a consideration in sentencing. Moreover, it is clear that Rogers too had a criminal record.

The circumstances surrounding the burglary lend support, however, to the conclusion that Rogers played a lesser role in the crime than did Price. Rogers' testimony revealed that the entire plot to burglarize Tel-Air Communications was conceived by McLaughlin. However, it was Price and not Rogers who pried open the door and entered the Tel-Air Communications building and committed the burglary. Rogers' role was passive. He stood at the door and received the cash and a pistol handed him by defendant. Thus, the trial court might well have concluded that defendant's role in the crime as compared with Rogers' justified the disparity in sentences.

Even assuming that the sole basis for the different sentences was the fact that Rogers entered a plea of guilty and testified, whereas defendant entered a plea of not guilty and demanded a jury trial, this in itself would not warrant a reduction in defendant's sentence. In *Nelson, supra,* page 821, the court commented on the holding in the *Jung Case:*

"Recently in *Jung v. State* it was held the mere fact that an accused who pleaded not guilty and received a substantially greater sentence than an accomplice who

pleaded guilty and testified for the state did not establish grounds for relief nor did it constitute a violation of due process or equal protection of the laws guaranteed by the constitution."

In any event, we see no evidence that the sentence imposed upon Price was too severe under the circumstances.

*By the Court.*—Judgment and order affirmed.