STATE, Appellant, v. I, A WOMAN—PART II, Respondent.

*No. 125. Argued November 5, 1971.—Decided November 30, 1971.*
(Also reported in 191 N. W. 2d 897.)

103

104

For the appellant the cause was argued by *E. Michael McCann,* district attorney of Milwaukee county, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *Elmer Gertz* of Chicago, Illinois, and *Paul L. Moskowitz* of Milwaukee, attorneys, and *Wayne B. Giampietro* of Chicago, Illinois, of counsel, and oral argument by *Mr. Moskowitz* and *Mr. Gertz.*

HEFFERNAN, J. The judgment purported to recite that the underlying action was "a proceeding under Chapter [sec.] 269.565 of the Wis. Stats." That section of the statutes is captioned, "Declaratory judgments

against obscene matter." [1]   An examination of the proceedings reveals that the procedure followed in this case was at wide variance from the procedure prescribed by the statute. The record reveals that the ad hoc procedure utilized in this case was designedly adopted as a result of the recognition by the prosecutor and the trial judge that the legislatively prescribed procedures were insufficient to assure due process and the protection of the first-amendment rights of free speech. Both judge and prosecutor recognized what is apparent to this court—the statute is, in part at least, unconstitutional.

The statute provides that the district attorney could, when he had reasonable cause to believe that a film or other thing was obscene, file a complaint against such matter.

In the instant case an in rem proceeding was commenced by the filing of a summons and a complaint that alleged that the film, "I, A Woman, Part II" (hereinafter film) was obscene, and that it was being shown to patrons of a Milwaukee theater. The prayer of the complaint asked that the court make a summary examination of the film to determine whether there was reasonable cause to believe the film was obscene. This procedure is prescribed by sec. 269.565, Stats. The instant procedure deviated, however, from the legislative scheme in that there appears in the complaint a penned interlineation that the court determine "after adversary hearing" that there is reasonable cause to believe the film obscene. The statute makes no provision for an adversary hearing prior to the issuance of an order to show cause. The statute merely requires:

"Upon the filing of such complaint, the court shall make a summary examination of such matter. If it is of the

---

[1] The entire text of sec. 269.565 appears appended to this opinion.

opinion that there is reasonable cause to believe that such matter is obscene, it shall issue an order, directed against said matter by name, to show cause why said matter should not be judicially determined to be obscene."

The complaint herein asked that the order to show cause be returnable in thirty days and that, in the interim and until a final adjudication could be had, the court issue an interlocutory order adjudging the film obscene, which order, the state asked, was to have the same effect as a final judgment until a final judgment was made or until further order of the court. This procedure is statutorily prescribed by sec. 269.565 (1) and (1m), Stats.

Instead of making a summary examination of the matter to determine whether there was reasonable cause to believe that the matter was obscene and then issuing an order to show cause, the court in this case, on October 31, 1969, after a perusal of the complaint, issued a "Notice" reciting that, incident to the summary examination provided in sec. 269.565 (1), Stats., it would conduct an adversary hearing for the purpose of issuing the "Order to Show Cause" and the proposed "Interlocutory Finding and Adjudication" attached to the notice. The court directed that service be made on the parties, *i.e.*, distributors of the film and the theater operator not less than twenty-four hours before the hearing scheduled for 11 a. m. on November 3, 1969. Service was made on the general manager of Prudential Theaters Company at his place of business in Milwaukee. Other parties were notified of the projected proceeding by telegram [2] and by

[2] "Morris Dudelson, 1325 South Wabash Avenue, Chicago, Illinois; Chevron Films, Inc., 1325 South Wabash Avenue, Chicago, Illinois

"Summary examination pursuant to Wisconsin Statutes Sec. 269.565 (1) of the film 'I, A WOMAN, PART II' and adversary hearing incidental thereto to be conducted by Judge ROBERT W. LANDRY at Milwaukee County Courthouse at 901 North Ninth

mail. On November 3d, the film was viewed, and proceedings were held that day and on November 4th and 5th. Testimony was taken wherein the witnesses for the state gave their opinion that the film was obscene, and witnesses appearing on behalf of the film testified that, despite its prurient appeal, it was of redeeming social importance and, hence, not legally obscene. The trial judge made the following findings:

"6) The motion picture 'I, a Woman, Part II' is a character study, ~~in depth and with considerable artistry,~~ of a neurotic individual who claims to have a superman mentality, but who in reality suffers from an inferiority complex. The film depicts and develops the workings of his depraved mind, as a sort of case study. We see him corrupt everything about him in order to manifest his superiority, and this leads to a portrayal of much depraved conduct in order for us to understand the sick mind of the man. He places higher value on corruption and depravity and this forces him to attempt to destroy love, justice and truth. The result of these actions, as the film shows, is the utter collapse of this individual. The film thus has social value in its depiction of a type ~~; and its dominant theme does not appeal to prurient interest, nor does it go beyond contemporary community standards in the depiction of sex. It is basically a serious work.~~" (Lined out words were stricken by Judge from defendant's proposed findings.)

The judge's opinion demonstrated that he used the *Roth* test of obscenity, but found it unnecessary to determine whether the dominant theme of the film, taken as a whole, appealed to prurient interest or whether it was patently offensive as an affront to contemporary com-

Street, Milwaukee, Wisconsin, at 11 a. m. on the 3rd day of November, 1969, to determine whether the Court should issue an Order to Show Cause under the said Statute and to determine provisionally if said film is obscene."

E. Michael McCann
District Attorney, Milwaukee County

munity standards. Having found that the film was not utterly without value, the trial judge concluded that the additional findings were not necessary. Judgment was entered dismissing the state's complaint.

We conclude that the proceedings following the issuance of the complaint are null and void. Accordingly, the judgment must be vacated.

The legislature provided that the question of obscenity *vel non* of any matter could be raised in a sec. 269.565, Stats., proceeding only if the circuit judge, after his own summary examination following the filing of a complaint, concluded that there was reasonable cause to believe that the matter was obscene. No such summary determination was made. The reason why this step was omitted is clear. The trial judge, as well as the prosecutor, was attempting to avoid the possibility of a prior restraint of materials arguably protected by the first amendment without having first determined on the merits the question of obscenity in an adversary hearing. The prior-restraint pitfall at this point in the proceedings was avoided, but it is apparent that, in attempting to fashion a constitutionally antiseptic proceeding, the initial and essential jurisdictional step required by the statute was omitted.

The in rem procedures against arguably obscene materials are completely encompassed by the strictures of sec. 269.565, Stats., and, hence, it must be concluded that possible alternate common-law or equitable in rem proceedings have been suspended. While it may on occasion be permissible for courts to fashion procedures that are constitutionally necessary to carry out the manifest legislative intent, courts and prosecutors may not make their own procedural substitutions for those clearly prescribed by the legislature.

Since the trial judge did not make the initial determination that there was reasonable cause to believe the

film was obscene, he was without jurisdiction to proceed further. He was without the power to make any determination whatsoever.

It is apparent, therefore, that the judgment that the film is not obscene and the findings that underpinned the judgment are a nullity and must be set aside.

It appears, however, that the district attorney's complaint states a cause of action under the statute on which further relief could have been granted, although not necessarily as prayed for.

The questioned film was included in the record and has been viewed by the entire court. From such viewing, we conclude that reasonable men might well differ whether the film is obscene, but that there is reasonable cause to conclude that it is obscene. Thus, the question is one that may be determined only by a further fact-finding process. *Kingsley Books, Inc. v. Brown* (1957), 354 U. S. 436, 448, 77 Sup. Ct. 1325, 1 L. Ed. 2d 1469 (Mr. Justice BRENNAN dissenting).

The further fact-finding process may, therefore, be initiated by the trial court's issuance of the necessary order to show cause upon remand of the record. Our determination of reasonable cause is only that and does not adumbrate any decision by this court upon the merits. Since *Court v. State* (1971), 51 Wis. 2d 683, 699, 188 N. W. 2d 475, this tribunal will review determinations of obscenity upon the record and will sustain the findings of the fact finder if supported by substantial evidence when the record is considered as a whole.

Since *Court,* the same standards on review apply whether the fact finder is judge or jury. However, we concur in the rationale expressed by Mr. Justice BRENNAN in the dissent to *Kingsley Books, supra,* page 448:

"The jury represents a cross-section of the community and has a special aptitude for reflecting the view of the average person. Jury trial of obscenity therefore pro-

vides a peculiarly competent application of the standard for judging obscenity which, by its definition, calls for an appraisal of material according to the average person's application of contemporary community standards. A statute which does not afford the defendant, of right, a jury determination of obscenity falls short, in my view, of giving proper effect to the standard fashioned as the necessary safeguard demanded by the freedoms of speech and press for material which is not obscene."

For the reasons stated, it is apparent that the *Court* review will be particularly efficacious where the review is of a jury verdict as compared to a finding of the trial court, and the right to a jury trial optimally should be afforded at the request of the state as well as the defendant.

Only on a review of the fact finding by a court or jury will this court affirm or reverse a finding of obscenity. Our determination of probable cause in the instant case is no more than a determination that the trial court has jurisdiction to proceed and that a factual question, under constitutional standards, in regard to the obscenity of the film is presented.

While the rationale set forth above sufficiently disposes of the judgment heretofore entered, it is apparent that it leaves unanswered constitutional problems raised by the statute which the trial judge and the Milwaukee prosecutor sought to obviate.

The statutory procedure calls into question whether material is to be given the benefit of the protections of the first amendment to the Constitution of the United States and article I, section 3 of the Wisconsin Constitution.

It is therefore imperative that such a statute be constitutional, for the right protected by the first amendment is the right of all the people to inform and to be informed. In examining a statute that defines a procedure to determine that some materials will be denied

first-amendment protections, more than the interest of
the particular litigant before the court is at stake—the
constitutional rights of all the people are at issue. For
this reason this court, as well as the United States Su-
preme Court, has concluded that such a statute can be
inquired into from a constitutional viewpoint even though
the particular litigant has not been unconstitutionally
deprived of his rights by the operation of the statute.

The proposition has been stated by the United States
Supreme Court in *N.A.A.C.P. v. Button* (1963), 371
U. S. 415, 432, 83 Sup. Ct. 328, 9 L. Ed. 2d 405:

". . . in appraising a statute's inhibitory effect upon
[first amendment] rights, this Court has not hesitated to
take into account possible applications of the statute in
other factual contexts besides that at bar."

In the instant case, those who appeared as interested
in the film, "I, A Woman, Part II," were not denied an
adversary hearing, the state assumed the burden of going
forward with the evidence of obscenity, and a judgment
was issued only after a prompt and final (at the trial
level) adjudication on the merits. Despite the fact that
those representing the film cannot claim to have been in-
jured in any of these respects, particularly since the film
was found not obscene, we conclude they have standing
to raise the constitutional questions that appear on the
face of the statute.[3]

It is apparent from the language of the United States
Supreme Court that a prohibited "prior restraint" is not
limited to the suppression of a thing before it is released
to the public. Rather, an invalid prior restraint is an in-
fringement upon the constitutional right to disseminate
matters that are ordinarily protected by the first amend-
ment without there first being a judicial determination

---

[3] It is unfortunate that the state failed to reply to the con-
stitutional questions raised in defendant's brief. They were dealt
with but cursorily in oral argument.

that the material does not qualify for first-amendment protection. *Near v. Minnesota* (1931), 283 U. S. 697, 51 Sup. Ct. 625, 75 L. Ed. 1357; *Freedman v. Maryland* (1965), 380 U. S. 51, 85 Sup. Ct. 734, 13 L. Ed. 2d 649.

In *Near v. Minnesota,* an injunction against further publication was issued against a publisher, and a violation of the injunction subjected him to contempt penalties. This was held to be a prior restraint in violation of the first amendment.

The statute herein provides that, following the trial judge's determination of reasonable cause, and prior to any further proceedings of an adversary nature, the prosecutor may request, and the court may issue, an interlocutory order that the material *is* obscene. By sec. 269.565 (1m), Stats., that interlocutory order has the effect of a final order until a final adjudication, and under sec. 269.565 (6) may be admitted in a criminal trial on the issue of obscenity when the conduct upon which the criminal prosecution is based arose more than eighteen hours after notice of the issuance of the interlocutory process. We are satisfied that a statute that permits the use of the interlocutory judgment for such purpose authorizes an impermissible and unconstitutional prior restraint. In addition, the mere issuance of the interlocutory judgment, even without its subsequent use in a criminal trial, constitutes an impermissible chilling of first-amendment rights when there has been no prior adversary adjudication of obscenity. True, since *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498, it has been "pellucidly clear"—to quote a favorite phrase of the appellant district attorney— "that obscenity is not within the area of constitutionally protected speech or press." (*Roth,* p. 485.) *Kingsley Books, Inc. v. Brown, supra,* pointed out that states were not limited to criminal prosecutions in the battle against obscenity. In rem procedures were given the supreme

court's imprimatur, provided that basic elements of due process were observed.

*Freedman v. Maryland, supra,* explicated the due-process standards where a noncriminal statute was invoked to suppress obscenity. The supreme court said in *Freedman,* at page 58:

". . . because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint."

The statute herein violates the *Freedman* rule in that the interlocutory order, with its chilling effect on first-amendment rights and its evidentiary impact in a criminal case, can issue before the interested parties are heard in an adversary hearing. In fact, the order can issue even before the interested parties are notified of the commencement of the action. The statute, to the extent that it permits the issuance of an *ex parte* interlocutory order prior to a determination of the merits in an adversary judicial proceeding, is unconstitutional.

*Blount v. Rizzi* (1971), 400 U. S. 410, 417, 91 Sup. Ct. 423, 27 L. Ed. 2d 498, further interpreted *Freedman* to impose three requirements for the censorship or suppression of obscene matter if constitutional infirmity is to be avoided. The enforcement scheme must:

". . . place the burdens of initiating judicial review and of proving that the material is unprotected expression on the censor; require 'prompt judicial review,'—a final judicial determination on the merits within a specified, brief period—to prevent the administrative decision of the censor from achieving an effect of finality; and limit to preservation of the status quo for the shortest, fixed period compatible with sound judicial resolution, any restraint imposed in advance of the final judicial determination."

It is apparent that sec. 269.565, Stats., fails in some respects to meet the standards of *Freedman*. The statute provides that, in the event of default of appearance of the parties served:

". . . the court may then, without notice, upon motion of the plaintiff, if the court finds that the matter is obscene, make an adjudication against the matter that the same is obscene." Sec. 269.565 (3).

To the extent that this statute is interpreted to relieve the state of its burden of proving that the material is an unprotected form of expression, it is unconstitutional. Since the public interest is affected in the process of finding any matter not protected by the first amendment, the plaintiff is obligated to assume its burden of presenting a prima facie case, default or not.

Since we hold that an interlocutory order following the trial judge's administrative *ex parte* determination that there is reasonable cause to believe the matter is obscene is void, there can be no intermediate judgment or order to review. However, even the trial judge's finding that there is reasonable cause to believe the matter obscene, the jurisdictional requirement of the statute, may have a chilling effect, and there should be rapid resolution on the merits in a fashion that is compatible with the rights of the parties. The statute, though it provides for a speedy trial—in that it cannot be adjourned more than seventy-two hours if any person in answering so demands —fails to provide for a final determination on the merits within a *specified,* brief time. In the instant case the trial judge moved with alacrity and dispatch, but the statute does not so require.

Moreover, although the court's judgment that the matter is obscene is made appealable to this court at either the interlocutory or final stage, no time limit is imposed which affords the defendant any protection during what

may be a lengthy interim pending appeal. Since the statute contemplates that the interlocutory judgment would have evidentiary effect in a criminal proceeding although the merits have not been heard, it would appear that the statute would permit the final adjudication to have the same effect in a criminal trial even though an appeal were pending on the merits. It is obvious that a constitutional problem is presented.

It should be pointed out that any statute that forces a final adjudication in the trial court within an unduly short time might well deny a defendant a fair trial. He should be given the opportunity to prepare his case and secure witnesses in his own behalf. The present statute forces the state, which is presumably prepared for trial, to go to trial within seventy-two hours, but wisely leaves to the defendant the opportunity to have further time to prepare his case. While it is important that the adjudication be prompt, due process requires that the defendant have an opportunity to marshal his defenses, and that the judge have an opportunity for careful deliberation. We conceive that it was to these problems that Mr. Justice BRENNAN alluded in *Blount,* page 417, when he pointed out that, in proceedings of this kind, the interim period be "the shortest, fixed period *compatible with sound judicial resolution."* (Emphasis supplied.)

We are also concerned with the provision of the statute that provides that the judgment in the in rem proceeding shall be admissible in evidence in a subsequent criminal action. It is probable that the drafters of the statute assumed that the judgment would be evidence in a criminal trial against one who was a party to the in rem action. As so interpreted, the statute is eminently sensible. The in rem judgment not only supplies the element of *scienter,* but also evidence which may be sufficient to secure a conviction. The statute assumes that the criminal prosecution is substantially contemporaneous with,

*i.e.*, shortly after the in rem proceedings, but the statute would make the judgment admissible in evidence against *any* defendant who had notice of it irrespective of the time lapse between the in rem judgment and the criminal action. The standards for determining obscenity to which this court adheres are those of *Roth-Memoirs*. Included in those standards is:

"(b) the material is patently offensive because it affronts *contemporary* community standards relating to the description or representation of sexual matters." (Emphasis supplied.) *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 418, 86 Sup. Ct. 975, 16 L. Ed. 2d 1. *See also: Court v. State* (1971), 51 Wis. 2d 683, 188 N. W. 2d 475.

Since the finding of obscenity is dependent upon the materials' affront to *contemporary* standards, it is apparent that the judgment cannot preserve its pristine viability with the passage of time. In order to preserve the evidentiary value of the judgment in a subsequent criminal trial, must the trial judge test the admissibility by the relevance of a prior in rem judgment to the current criminal prosecution? *E.g.*, what evidentiary value would an in rem judgment secured in Superior in 1971 have in Milwaukee in 1981? Would there be sufficient contemporaneity? We pose the questions and do not attempt to answer them. We said in *Court, supra,* page 692:

"The mere fact that the *Roth* test states that the standards are to be 'contemporary' is indicative that the United States Supreme Court did not intend that there be an ossification of mores or that decisions of the past should bind the present or contemporary scene."

As Mr. Justice DOUGLAS points out in his dissent to *Kingsley Books, Inc., supra,* page 447, "The audience (in this case the judge or the jury) that hissed yesterday may applaud today, even for the same performance."

It might well be that the judgment, though admissible, in the exercise of judicial discretion could be excluded as being otherwise insufficiently probative, relevant, or contemporaneous. Model Code of Evidence, Rule 303, page 180; *State v. Hutnik* (1968), 39 Wis. 2d 754, 159 N. W. 2d 733; *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557; *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222.

Since we have found that the trial judge did not have jurisdiction to proceed, we have not considered his finding on the merits. We have, however, carefully read his memorandum decision. It is an exemplary and scholarly opinion. It was, however, written prior to our decisional gloss on the *Roth-Memoirs* standards in *Court v. State, supra*. The trial judge herein in discussing the third standard of the *Roth-Memoirs* test—"(c) the material is utterly without redeeming social value" (*see Court, supra*, p. 691)—stated, "Redemption means not a balancing, but whether there is an iota of quality which can be considered sufficiently meritorious." Certainly this is a meaning that could reasonably have been given to the United States Supreme Court's evanescent standard. It is not, however, the interpretation to which we adhere. In *Court* we said at pages 702, 703:

"It should be pointed out that even that statement carries with it a balancing element. The supreme court, though criticizing the Massachusetts court, did not hold that a material must be utterly without value to be found obscene. It qualified the type of value the material must have to be saved. The value must be social, and it must be redeeming. These are words that carry the implicit connotation of a fact finder's value judgment. They are words that suggest a balancing of interests."

Nor do we believe that the value that will redeem a prurient piece that affronts contemporary community standards is a miniscule value, a mere scintilla of social

value, an "iota," or infinitesimal value. If the material is objectionable on the first two *Roth-Memoirs* standards, it will be redeemed only by a social value that is discernible to a reasonable finder of fact, is demonstrable, and not conjectural. It should pervade the material, and cannot appear as noble platitudes with a social message unrelated to the uniform tenor of the material. The third standard of the *Roth-Memoirs* test presupposes that the qualities that purport to save the material as evincing redeeming social value are not mere makeweight contrived to avoid the operation of the rule. The rule does not presuppose that judges or juries are either naive or stupid. As stated succinctly in the concurring opinion to *Court, supra,* page 717, "An orange floating in an open sewer does not change it into a fruit salad."

While we have pointed out certain constitutional pitfalls that inhere in the statute, most of them may be obviated by not entering an order that purports to have effect or evidentiary weight prior to an adjudication of obscenity in an adversary judicial process. In order to preserve the constitutionality of the remainder of the statute, the final adjudication must be reached with celerity by the trial court. Upon appeal it becomes incumbent upon this court to give the appeal priority and to decide it as rapidly as may be consonant with proper judicial review and deliberation. While the constitutionality of the statute can thus be minimally preserved, it is apparent that its procedural effectiveness is substantially reduced.

The statute has the laudable objective of determining obscenity without the necessity of placing a defendant in jeopardy of a criminal conviction. It attempts to prevent the dissemination of unprotected material before a crime has been committed. This court cannot, however, rewrite the statute to assure that this purpose will in all cases be attained within the constitutional limitations of

due process and certainty. There is no doubt that carefully drafted legislation will accomplish this purpose, but this requires fact finding and public policy determinations that only the legislature can furnish. The present statute presents a grave question whether judicial interpretations of the statute can preserve its effectiveness from a public policy viewpoint and yet conform to the constitutions of the state and nation. We invite the legislature's consideration of the problem areas pointed out in this opinion.

*By the Court.*—The judgment and findings of the trial court are vacated as being made without jurisdiction. The provision of sec. 269.565 (1m), Stats., permitting an interlocutory judgment prior to an adversary adjudication, and the provision of sec. 269.565 (6), to the extent it permits the admission of an interlocutory judgment in evidence in a criminal trial, are declared to be unconstitutional. The cause is remanded for such further procedures as may be consonant with this opinion.

269.565 **Declaratory judgments against obscene matter.** (1) GROUNDS FOR AND COMMENCEMENT OF ACTION. Whenever there is reasonable cause to believe that any book, magazine, or other written matter, or picture, sound recording or film, which is being sold, loaned or distributed in any county, or is in the possession of any person who intends to sell, loan or distribute the same in any county, is obscene, the district attorney of such county, in the name of the state, as plaintiff, may file a complaint in the circuit court for such county directed against such matter by name. Upon the filing of such complaint, the court shall make a summary examination of such matter. If it is of the opinion that there is reasonable cause to believe that such matter is obscene, it shall issue an order, directed against said matter by name, to show cause why said matter should not be judicially determined to be obscene. This order shall be ad-

dressed to all persons interested in the publication, production, sale, loan, exhibition and distribution thereof, and shall be returnable within 30 days. The order shall be published as a class 2 notice, under ch. 985. A copy of such order shall be sent by certified mail to the publisher, producer, and one or more distributors of said matter, to the persons holding the copyrights, and to the author, in case the names of any such persons appear on such matter or can with reasonable diligence be ascertained by said district attorney. Such publication shall commence and such notices shall be so mailed within 72 hours of the issuance of the order to show cause by the court.

(1m) INTERLOCUTORY ADJUDICATION. After the issuance of the order to show cause under sub. (1), the court shall, on motion of the district attorney, make an interlocutory finding and adjudication that said book, magazine or other written matter or picture, sound recording or film is obscene, which finding and adjudication shall be of the same effect as the final judgment provided in sub. (3) or (5), but only until such final judgment is made or until further order of the court.

(2) RIGHT TO DEFEND; JURY TRIAL. Any person interested in the publication, production, sale, loan, exhibition or distribution of such matter may appear and file an answer on or before the return day named in said notice. If in such answer the right to trial by jury is claimed on the issue of the obscenity of said matter, such issue shall be tried to a jury. If no right to such trial is thus claimed, it shall be deemed waived, unless the court shall, for cause shown, on motion of an answering party, otherwise order.

(3) DEFAULT. If no person appears and answers within the time allowed, the court may then, without notice, upon motion of the plaintiff, if the court finds that the matter is obscene, make an adjudication against the matter that the same is obscene.

(4) SPEEDY HEARING; RULES OF EVIDENCE. If an answer is filed, the case shall be set down for a speedy hearing, but an adjudication of default and order shall first be entered against all persons who have not appeared and answered in the manner provided in sub. (3). If any person answering so demands, the trial shall not be adjourned for a period of longer than 72 hours beyond the opening of court on the day following the filing of his answer. At such hearing, subject to the ordinary rules of evidence in civil actions, the court shall receive the testimony of experts and evidence as to the literary, cultural or educational character of said matter and as to the manner and form of its production, publication, advertisement, distribution and exhibition. The dominant effect of the whole of such matter shall be determinative of whether said matter is obscene.

(5) FINDINGS AND JUDGMENT. If, after such hearing, the court, or jury (unless its finding is contrary to law or to the great weight and clear preponderance of the evidence), determines that such matter is obscene, the court shall enter judgment that such matter is obscene. If it is so determined that such matter is not obscene, the court shall enter judgment dismissing the complaint, and a total of not more than $100 in costs, in addition to taxable disbursements, may be awarded to the persons defending such matter, which shall be paid from the county treasury. Any judgment under this subsection may be appealed to the supreme court pursuant to ch. 274 by any person adversely affected, and who is either interested in the publication, production, sale, loan, exhibition or distribution of said matter, or is the plaintiff district attorney.

(6) ADMISSIBILITY IN CRIMINAL PROSECUTIONS. In any trial for a violation of s. 944.21 or 944.22, the proceeding under this section and the final judgment of the circuit court under sub. (3) or (5) or the interlocutory

adjudication under sub. (1m), shall be admissible in evidence on the issue of the obscenity of said matter and on the issue of the defendant's knowledge that said matter is obscene; provided, that if the judgment of the court sought to be introduced in evidence is one holding the matter to be obscene, it shall not be admitted unless the defendant in said criminal action was served with notice of the action under this section, or appeared in it, or is later served with notice of the judgment of the court hereunder, and the criminal prosecution is based upon conduct by said defendant occurring more than 18 hours after such service or such appearance, whichever is earlier.

WILKIE, J. (*concurring*). I concur with the majority in their disposition of this appeal and by so concurring in no way do I abandon my position as taken in my concurring opinion to *Court.*[1]

---

[1] *Court v. State* (1971), 51 Wis. 2d 683, 711–713, 188 N. W. 2d 475.