STATE, Respondent, v. MIDELL, Appellant.

*No. State 117. Argued June 7, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 614.)

For the appellant there was a brief and oral argument by *Harvey L. McCormick* of Milwaukee.

For the respondent the cause was argued by *E. Michael McCann,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *David J. Cannon,* district attorney. *Harold B. Jackson, Jr.,* assistant district attorney, also argued.

WILKIE, J.  Three issues are raised as to alleged trial errors:

1. Allowing one Mike Kominowski to testify that he also bought marijuana from the defendant on March 18, 1967.

2. Allowing the district attorney to cross-examine the defendant about the number and nature of prior criminal convictions.

3. Receiving into evidence the report of the state's expert witness regarding the tests made on the substance sold by the defendant to Davis.

### Testimony of Mike Kominowski.

The state produced as a witness, one Mike Kominowski, a sixteen-year-old high school boy who also worked at the Nauti-Gal. Todd Davis had testified earlier that no one, other than he and the defendant, had seen the sale that was the basis of the criminal charge, but that Kominowski had told him to go to the back room and that Kominowski was in the near vicinity when the sale was consummated. During direct examination of Kominowski by the district attorney the following took place:

"*Q*. Did you know the defendant, Lynn Midell, on March 18, 1967?  *A*. Yes.

"*Q*. Did you see him on that date?  *A*. Yes.

"*Q*. Where? Where was that?  *A*. At Nauti-Gal.

"*Q*. What time of the day did you see him, if you recall?  *A*. About through the whole afternoon.

"*Q*. What, if anything, happened at the Nauti-Gal Restaurant at that time?  *A*. Pertaining to what?

"*Q*. You and Mr. Midell.  *A*. Nothing. We did our work and that. At the end of the day a purchase was made.

"*Q*. What kind of a purchase?  *A*. I purchased a cigarette.

"*Q*. Where did that take place?  *A*. In the back room of the kitchen.

"*Q*. From whom did you purchase the cigarette?  *A*. From the defendant.

"*Q*. Can you —

"Mr. McCormick: Just a minute here. I'm confused as to whether or not the witness is testifying about the charge against the defendant or possibly another offense. The charge against this man is the selling of a cigarette to Todd Davis.

"Mr. Manian: Perhaps we should discuss this in chambers."

In chambers the defendant moved for a mistrial on the ground that the jury had been presented with information tending to establish that he had committed a second offense. The court denied the motion. The court then ruled that because this "all happens so close together . . .

I'm going to let it in." The defendant attacks this ruling, claiming that the admission of this evidence was prejudicial to the defendant. This is a familiar problem and in *Whitty v. State* [1] this court thoroughly reexamined the fundamental rules underlying the admissibility of evidence of prior crimes, incidents or occurrences. The court made it clear that such evidence is not admitted for purposes of proving general character, criminal propensity or general disposition on the issue of guilt or innocence because such evidence, while having probative value, is not legally or logically relevant to the crime charged. The evidence is admitted, however, when it is

". . . particularly probative in showing elements of the specific crime charged, intent, identity, system of criminal activity, to impeach credibility, and to show character in cases where character is put in issue by the defendant." [2]

In *Whitty* the court adopted Rule 303 of the American Law Institute Model Code of Evidence,[3] under which the trial court balances relevancy against prejudice. Because the two sales took place so close together, showing a pattern and a state of mind of the defendant, we do not think that the trial court abused its discretion in admitting the evidence. Furthermore, the other evidence is overwhelming of the defendant's guilt in selling a marijuana cigarette to Todd Davis. Therefore, any error

---

[1] (1967), 34 Wis. 2d 278, 149 N. W. 2d 557.

[2] *Id.* at page 292.

[3] "Rule 303. DISCRETION OF JUDGE TO EXCLUDE ADMISSIBLE EVIDENCE.

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

For an application of this rule in cases involving different issues, see *State v. Smith* (1967), 36 Wis. 2d 584, 153 N. W. 2d 538; *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222.

that might have been committed in admitting the testimony of Mike Kominowski as to the other transaction would be harmless and not prejudicial.

*Prior Crimes.*

At the outset of defendant's direct examination by his own attorney he was asked whether or not he had ever been convicted of a crime. He answered in the affirmative. The balance of his direct testimony was devoted to a denial of the offense charged. This denial rested on his claim that he left the Nauti-Gal to get a haircut at 1 p. m., and did not return until 7:30 p. m. Thus defendant's testimony put his credibility at issue. On cross-examination, Victor Manian, the assistant district attorney, asked the defendant how many times he had been convicted of a crime. After the defense objected, a conference was held in chambers and the question was permitted. Thereupon, defendant replied "I was convicted of two felonies." After informing the defendant of the definition of a crime he was asked if that definition would make his answer any different. Defendant replied, "Yes. Approximately about 15 times." The prosecutor then moved on to questions relating to the offense charged.

On redirect the defendant, upon questioning by his attorney, explained that some of the 15 convictions were for traffic offenses. The court then questioned the defendant and the defendant stated that he had been convicted of only five crimes other than traffic violations.

Defendant now contends, relying on *State v. Adams*,[4] that the district attorney improperly questioned him about the number of his previous crimes and about the nature of these convictions. As to the defendant's first contention, sec. 885.19, Stats., expressly provides that a defendant who takes the stand may be asked if he has

---

[4] (1950), 257 Wis. 433, 43 N. W. 2d 446.

ever been convicted of crime. *State v. Ketchum* [5] ruled that such defendant may be asked the number of times he has been so convicted. In *State v. Adams* the defendant had testified on direct examination to four previous convictions. On cross-examination, the district attorney referred to the nature of such previous offenses and this court held that it was error to permit such inquiry. The court did not conclude that the mere number of convictions may not be brought out. As to the nature of the offenses, in the instant case the defendant's own counsel explored the nature of each offense and the court itself finally elicited the information that the defendant had been convicted five times excluding the traffic offenses.

### Report of Expert Witness.

Prior to the selection of the jury, the court informed defendant's attorney that if he called an expert witness to testify regarding the alleged marijuana and the expert indicated that he needed time to make tests, the court would grant time if satisfied that it was necessary.

During the trial, the state called Herbert Herrer, chief chemist for Milwaukee, to testify regarding tests he performed on the cigarette sold by defendant to Todd Davis. After an elaborate explanation of his procedures, Mr. Herrer concluded that the weeds inside the cigarette were marijuana. Mr. Herrer's testimony revealed that he performed four different tests on the weeds. The weight of the weeds was .17 grams when the tests were commenced and approximately .04 or .05 grams when they were completed. The chemist's testimony indicated that it would take a little over an hour to conduct all the tests that he performed.

---

[5] (1953), 263 Wis. 82, 87, 56 N. W. 2d 531.

On cross-examination, Mr. Herrer was asked the following question and he gave the following answer:

"*Q.* Would there be enough remaining for another chemist to make an analysis of it? *A.* If he makes all the tests which I have made, I'd say no."

When the state moved the admission of Mr. Herrer's report into evidence, defense counsel objected saying:

"Our objection to the introduction is that the residue of the alleged marijuana, according to the expert's testimony, is not sufficient for an independent examination on the part of the defendant."

The objection was overruled. Defendant now alleges that the trial court erred in receiving the report in evidence. Defendant's capsulized argument on this point states that "His expert witness was not allowed time to conduct his examination, confer with counsel, and be prepared to testify at the trial." [6]

Defendant's argument is fatally deficient on at least two grounds. The defense never called an expert witness to testify either that .05 grams were insufficient for testing purposes or whether four tests were necessary to determine whether the weed was marijuana. There is no evidence that the weed was anything other than marijuana.

No error was committed in receiving Mr. Herrer's report into evidence.

*By the Court.*—Judgment affirmed.

---

[6] Appellant's brief at page 20.