SERAPHINE and wife, Appellants, v. HARDIMAN and others, Respondents.

*No. 149. Argued September 4, 1969.—Decided September 30, 1969.*
(Also reported in 170 N. W. 739.)

For the appellants there was a brief by *Snyder, Fisher, Lee & Lilly* of Milwaukee, and oral argument by *Edward H. Snyder*.

For the respondent Helen C. Hardiman there was a brief by *Hippenmeyer, Reilly, Fritz & Arenz* of Waukesha, and oral argument by *Richard S. Hippenmeyer*.

For the respondent Laura P. Hardiman there was a brief by *Lowry, Hunter & Tikalsky,* and oral argument by *Thomas E. Anderson,* all of Waukesha.

For the respondents Center Street Fuel Company, Hardiman Oil Inc., and Elmer H. Kelling there was a brief by *Hersh, Magidson & Lensky* of Milwaukee, and oral argument by *Arthur Magidson.*

HALLOWS, C. J.  The basic issue is whether the Seraphines met their burden of proving an oral agreement for the sale of the land and easements.  According to the testimony offered by Seraphine, a gravel hauler, he made an oral agreement with Hardiman Oil Company, a partnership composed of Milo and Ralph Hardiman, brothers, which was the owner of a tract of land in the village of Sussex, Wisconsin.  Seraphine testified that sometime prior to June 15, 1961, he entered into the oral agreement for six-tenths of an acre of land and certain easements to be used in connection with the land for $800.  The purchase price was paid in instalments; the final payment being made on October 12, 1962.  In February, 1963, he received a warranty deed but the legal description did not conform with a legal description in a survey, which Seraphine testified he received about the time he made the oral contract, so he rejected the deed.

The survey, dated January 5, 1961, shows the six-tenths of an acre as being a piece of land approximately 220 feet by 120 feet set back from Silver Spring Road about 158 feet.  Connecting this parcel with the road is an easement varying from 30 feet at Silver Spring Road to 60 feet along the south side of the parcel of land.  The survey also shows what is claimed by Seraphine to be other easements over adjoining land.  These easements would give him the right to use the land along the east side of the fee parcel to a distance of 50 feet and a triangular area between Silver Spring Road and the fee parcel.

Stuart Hildebrand, a surveyor, testified he surveyed the land about a week prior to its date and had talked to Milo Hardiman who pointed out the specific boundary points of the property including the easements which were to be included in the survey.  Hildebrand further testified the easements were to be used in conjunction with the land conveyed to the Seraphines.  However, on

cross-examination Hildebrand testified he could find no billing for the survey, he did not talk to Milo but to his brother Frank, although there is no brother by the name of Frank, and that Hardiman never told him whom the survey and the easements were for.

Milo Hardiman died on May 4, 1962, and shortly after the commencement of this action, Ralph Hardiman died. On January 24, 1964, Center Street Fuel Company agreed to purchase all the assets of the business carried on by the Hardiman partnership including the land which it owned. A new corporation, the Hardiman Oil Inc., was organized by Center Street Fuel Company and the land, excepting that described in the deed to the Seraphines, was conveyed to the new corporation. No agent or representative of the Center Street Fuel Company made any inquiry of Mr. Seraphine concerning his rights or interests in the property described in the survey.

During some or all of this time Seraphine was parking his four large 47-foot gravel tractor-trailers on the six-tenths of an acre parcel, about which there is no dispute, and was using the area over which he claims he has easements for the use thereof. This use was not such as to put a proposed buyer on notice of Seraphines' claim. Other people used the same area and this land is near a filling station, unmarked, unfenced, and had the appearance of open space. The dispute over the easements came to a head when the Seraphines began constructing a building on the property owned in fee and as a result the Seraphines commenced this suit.

One difficulty with this appeal is that the Seraphines ignore the fact the trial court, the trier of the facts, did not believe the testimony of the surveyor and Seraphine. The testimony which remains, after excluding that which was rejected as lacking credibility, fails to meet the burden of proof which requires an oral contract to be proved by clear, convincing, and satisfactory evidence. It

is an old and well-established rule in this state that in cases for specific performance an oral contract and all its essential terms must be proved by clear, convincing, and satisfactory evidence. A mere preponderance of the evidence is not sufficient. *Blanchard v. McDougal* (1857), 6 Wis. 165 (*167); *Fontaine v. Riley* (1926), 189 Wis. 226, 207 N. W. 256; *Marshall & Ilsley Bank v. Schuerbrock* (1928), 195 Wis. 203, 217 N. W. 416; *Estate of Powell* (1932), 206 Wis. 513, 240 N. W. 122.

If the trial court had made a finding of fact that no oral contract was made, this court on this appeal would apply the usual rule that it would not reverse the trial court's findings of fact unless they were against the great weight and clear preponderance of the evidence. Such rule of review applies regardless of whether the finding is positive or negative in character. *See Rodman v. Rodman* (1901), 112 Wis. 378, 88 N. W. 218, for a case involving a negative finding.

On the issue raised by the complaint the court did not make a finding that there was no contract. What the trial court did was to find as a matter of law that the Seraphines did not meet the burden of proof. This is a question of law which this court can examine but in doing so it must accept the trial court's view of the credibility of the witnesses unless we can say the trial court was wrong on credibility as a matter of law. After an examination of the record, we accept the trial court's view of the credibility of the witnesses and its conclusion of the insufficiency of the proof. We do not reach any problem of the statutes of fraud or part performance because of the determination of this threshold question.

Seraphines argue the case should not have been dismissed on its merits but a nonsuit should have been granted. If the defendants' motion had been for an involuntary nonsuit, the order dismissing the complaint could not have been on its merits. *Klapinski v. Polewski* (1963), 19 Wis. 2d 124, 119 N. W. 2d 424. But in its oral

decision the trial court granted the motion of the defendants to dismiss the complaint while nothing was said about the merits. In the conclusions of law signed by the judge, he concluded the complaint should be dismissed upon its merits. We find no error. A dismissal on the merits may be based upon a conclusion of law, such as insufficiency of proof or upon a finding of fact which would not sustain a judgment in favor of the plaintiff. *See Spuhr v. Kolb* (1901), 111 Wis. 119, 86 N. W. 562.

Seraphines attack the trial court's findings of fact relating to the quiet-of-title issue raised in the counterclaim and resulting in the judgment quieting title to the disputed property in Hardiman Oil Inc., free from the claimed easements. This is another way of claiming the evidence was sufficient to establish an oral contract for the conveyance of the easements. The attack on Finding No. 7, which Seraphines claim distorts the evidence, is without merit. It was found that a deed conveying the fee property but not the claimed easement was delivered to Seraphine and his wife. This fact is not negated by the claim that the Seraphines later rejected the deed. It is argued that Finding No. 8, which provided the partnership intended the deed to convey the property paid for, is not supported by the evidence. This objection depends upon the credibility of Seraphine and Hildebrand, which was rejected by the trial court. Lacking that, the execution and delivery of the deed raises the presumption the grantors intended the consequences of their acts and what the deed purported to convey.

Finding No. 9 is claimed defective because it places a burden of negative proof on the plaintiffs and assumes the impeached deed can be the basis of "legal consequences." Although this finding is poorly drawn, it purports to say the proof of the Seraphines was not sufficient to overcome the presumption of the intention of the grantors evidenced by the description of the land conveyed in the deed. We find no error here.

Findings No. 13, 14, and 15 basically find that Hardiman Oil Inc., was a bona fide purchaser without notice of the rights of the Seraphines and had no duty to investigate any claims of easements. In *Bump v. Dahl* (1965), 26 Wis. 2d 607, 133 N. W. 2d 295, 134 N. W. 2d 665, we explained the rule of constructive notice as applied to a buyer of land. We think the parking of trucks by Seraphine in what was an open area near a filling station and which was not exclusively used by Seraphine was not of such nature, considering the other factors in the record, as to put the buyer of the land on notice of any rights or easements to use the land. In addition, in view of the failure to prove the existence of an easement, this issue fails.

The trial court did not commit error at the close of the plaintiffs' case in granting judgment on the counterclaim without additional testimony. The plaintiffs had called the defendants adversely and had put in the testimony the defendants would have put in. There was evidence of sale, delivery of a deed, possession and no actual or constructive notice of the claimed easements. Testimony put in on one issue in a lawsuit is not restricted to that issue or to a limited purpose unless at the time of its admission it is so restricted. This should especially be true where the counterclaim is in effect the converse of the issue raised by the complaint.

Lastly, the Seraphines claim the court erred in not admitting certain evidence concerning the necessity of their having these easements in order to use the fee area of the property. This evidence consisted mainly in the amount of space required to maneuver the large tractor-trailers in the use of the fee area. Such evidence is material because it tends to show that it was probable the easements were included with the sale of the fee area so that the fee area could be used more conveniently for maneuvering of the large trucks. It was error to reject this testimony, but we do not believe the error was preju-

dicial in view of the fact the other testimony was rejected as being incredible. This evidence is not strong enough without the rejected evidence to meet the burden of proof.

*By the Court.*—Judgment affirmed.