STATE, Respondent, v. SPRAGGIN, Appellant.

*No. 75–561–CR. Argued January 4, 1977.—*
*Decided March 29, 1977.*
(Also reported in 252 N. W. 2d 94.)

For the appellant there was a brief and oral argument by *Ronald D. Davis* of Milwaukee.

For the respondent the cause was argued by *Maryann S. Calef*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

ABRAHAMSON, J. The defendant was convicted of intentionally aiding and abetting in the delivery of a controlled substance, heroin, contrary to secs. 161.41 (1) (a) [1] and 939.05 (2) (b), [2] Stats.

---

[1] Sec. 161.41, Stats.: "Prohibited acts A—penalties

"(1) Except as authorized by this chapter, it is unlawful for any person to manufacture or deliver a controlled substance. Any person who violates this subsection with respect to:

"(a) A controlled substance classified in schedule I or II which is a narcotic drug, may be fined not more than $25,000 or imprisoned not more than 15 years or both:"

[2] Sec. 939.05, Stats.: "Parties to crime

"(1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

In late August and early September of 1974 Agent Keenan Wells and other law enforcement officers were involved in an investigation of drug trafficking in the city of Beloit, Rock county, Wisconsin. The defendant, Martha Spraggin, as well as Eddie Blakely and Johnny Hayes Anderson were all suspected of involvement in this activity. In the course of the arrangement by Agent Wells to buy heroin he had occasion to speak on the telephone with a woman called Martha. At approximately 4 a.m. on September 5, 1974, Agent Wells made his purchase of a substance in a foil packet later identified as heroin, and arrested the seller. The defendant was not the seller. The purchase was made near the home of the defendant, and following this arrest, the police converged upon the defendant's residence. They found her in the garage along with a loaded .38 caliber pistol which was on the floor. After her arrest the defendant was taken inside the house where the police attempted to find Eddie Blakely, for whom they had an arrest warrant and who was believed to be living at the house. A search of the house for Blakely was unsuccessful, but it did reveal a distinctive television set. The legality of the search and the discovery of the set and other items was upheld in *State v. Spraggin*, 71 Wis.2d 604, 610, 239 N.W.2d 297 (1976). At the conclusion of this search, the defendant was taken to the police station in Beloit. There she gave consent to have her house searched; she denied involvement in heroin trafficking and denied knowledge of the whereabouts of Eddie Blakely. The search made pursuant to that consent turned up in addition to the aforementioned television set numerous weapons including two illegally sawed-off shotguns, two bags of what was alleged to be marijuana, and a scale. Many of these items were introduced into evidence at

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; . . . ."

trial, and the defendant alleges the introduction of this evidence as error.[3]

In Wisconsin the admission of evidence relating to other crimes, wrongs or acts of the accused is now governed by sec. 904.04(2), Wisconsin Rules of Evidence.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The general rule is therefore to exclude use of other misdeeds to prove character in order to prove guilt. The reason for the exclusion of such evidence was explained by our court in *Whitty v. State,* 34 Wis.2d 278, 292, 149 N.W.2d 557 (1967):

"The character rule excluding prior-crimes evidence as it relates to the guilt issue rests on four bases: (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes."[4]

---

[3] The defendant's conviction of receiving stolen property was reversed on appeal and a new trial was ordered by this court. *State v. Spraggin,* 71 Wis.2d 604, 239 N.W.2d 297 (1976).

[4] Over sixty years ago this court, in *Paulson v. State,* 118 Wis. 89, 98, 99, 94 N.W. 771 (1903), recognized the rule against the admission of evidence of prior misconduct as bearing on the issue of guilt:

"From the time when advancing civilization began to recognize that the purpose and end of a criminal trial is as much to

However, the statute provides exceptions to the general rule prohibiting evidence of other conduct, namely, such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Even if the evidence of other conduct is admissible under one of the exceptions, the trial judge must exercise his or her discretion to determine whether any prejudice resulting from such evidence outweighs its probative value. Sec. 904.03, Wis. Rules of Evidence;[5] *Whitty v. State,* 34 Wis.2d 278, 149 N.W.2d 557 (1967), cert. den. 390 U.S. 959, 88 S. Ct. 1056, 19 L. Ed.2d 1155; *Kwosek v. State,* 60 Wis.2d 276, 208 N.W.2d 308 (1973).

discharge the innocent accused as to punish the guilty, it has been held that evidence against him should be confined to the very offense charged, and that neither general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him. This was predicated on the fundamental principle of justice that the bad man no more than the good ought to be convicted of a crime not committed by him. An exception is indulged where other crimes are so connected with the one charged that their commission directly tends to prove some element of the latter—usually guilty knowledge, or some specific intent. We mention this exception merely for accuracy, to qualify the generality of the foregoing statement. It obviously can have no application to such remote and disconnected events as those here presented. The cases in which overzealous prosecutors have trespassed upon this rule, so that appellate courts have had occasion to give it reiteration, are almost without number."

See also *Irby v. State,* 60 Wis.2d 311, 317, 210 N.W.2d 755 (1973); *State v. Tarrell,* 74 Wis.2d 647, 247 N.W.2d 696 (1976).

[5] Sec. 904.03, Wis. Rules of Evidence:

"Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The State introduced Exhibits 2 and 3 which were plastic bags containing a leafy substance. The court, over objection, admitted both exhibits into evidence and allowed them to go into the jury room during deliberations. Two police officers testified that the substances in the two bags were "grassy," "leaf-like substances" which "appeared to be marijuana." The police officers testified on the basis of their experience with marijuana; no analytical tests of the substances were put in evidence. The defendant objected to this non-expert, non-scientific evaluation of the substances. The State argues that the proof submitted was sufficient; the State's position is that in admitting evidence of possession of marijuana under the other-crimes rule, requiring the State to prove beyond a reasonable doubt that the substance was marijuana might have distracted and confused the jury.

The defendant objected to the evidence of this alleged marijuana as merely indicating bad character, having little probative value, causing unfair prejudice and not having anything to do with the merits of the charge. The State made no effort to connect this evidence in any manner to any element of the crime charged at trial. Nor did the State at trial contend that the presence of marijuana in defendant's home was proof in the heroin charge of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. There was no proof or argument that heroin dealers or their associates are known, or even likely, to possess marijuana. The marijuana evidence was merely offered and admitted over defendant's objections. There was no admonition or instruction to the jury as to any limited purpose for which the evidence was admitted or to be considered by the jury.

In its brief the State argues that the evidence of *possession* of the "alleged marijuana" is "particularly

probative on the question of *intent,* an element of the crime of aiding and abetting in the delivery of a controlled substance," namely, heroin. We are not persuaded that the possession of marijuana is probative of intentionally aiding and abetting the delivery of heroin.[6] The evidence was not limited by the judge to this question of intent as an element of aiding and abetting, and the judge did not instruct the jury to consider this evidence only for determining whether the aiding and abetting was intentional. The evidence went in; the jury heard the testimony; and the jury could handle the bags in the jury room during deliberations.

At the trial, the State laid the foundation for introducing into evidence weapons and stolen goods found in the defendant's house. The State had Officer Wells, a narcotics officer with the Wisconsin Department of Justice, Division of Criminal Investigation, testify that

---

[6] Several courts have concluded that possession of marijuana is not probative to show intent to sell heroin. *See Enriquez v. United States,* 314 F.2d 703, 715 (9th Cir. 1963); *United States v. Jones,* 438 F.2d 461, 465 (7th Cir. 1971); *Sweatt v. State,* 251 Ark. 650, 652, 473 S.W.2d 913 (1971). ("Proof that Sweatt had sold marijuana on other occasions had no relevancy except to show that Sweatt had dealt in drugs before and hence was likely to have done so again. That is precisely the type of proof that must be excluded. If Sweatt was guilty of other crimes, then, as we said in *Alford,* 'each may be examined separately in a court of law, and punishment may be imposed for those established with the required certainty. In this way alone can we avoid the elements of unfair surprise and undue prejudice that necessarily attend trial by accusation in place of trial upon facts demonstrated beyond a reasonable doubt.' ")

In *State v. Midell,* 39 Wis.2d 733, 737, 159 N.W.2d 614 (1968), a prosecution for selling marijuana to a minor, the court indicated that the trial court did not abuse its discretion in allowing the testimony of another minor of a different sale of marijuana by the defendant because "the two sales took place so close together, showing a pattern and a state of mind of the defendant." The court went on to say that any error that might have been committed in admitting the testimony was harmless in that case.

he had been involved in about 100 transactions involving the sale of heroin and that in almost every deal in which he was involved "there has been a weapon involved" and that "most of the dealers are totally involved with getting payments from heroin addicts via stolen goods." The court asked whether the State was trying to show that it is customary for heroin dealers to be in possession of stolen property. The witness responded: "I have seen it frequently on the street. Whether it could be considered customary more than 50 percent of the time, I don't know." The judge permitted the jury to hear Officer Wells' testimony that on the basis of his experience he believed that heroin dealers usually have weapons and stolen goods on the premises. The guns and allegedly stolen goods were introduced into evidence.

The defendant objected to this testimony and these exhibits. Again the defendant contended that such evidence indicated bad character, had little probative value, caused unfair prejudice, and did not have "anything to do with the merits of this charge." Before the close of the case the defense counsel again requested—with no success—that the jury be instructed to disregard the material taken from the defendant's home.

The judge allowed the evidence. At one point he said that the weapons and stolen goods showed that "the incident that she's involved in isn't an accident or a happenstance sort of thing, that she's involved in other criminal activity, all of which tends to show a criminal intent and a criminal scheme and design in this matter." The assistant district attorney said such evidence showed a "pattern of conduct." At another time the defense counsel said "Our position, Judge, is it simply puts her in a bad light and really hasn't got anything to do with the merits of this charge." The court responded, "That kind of evidence never does." The State in its brief frankly admits that the "customary activities of drug dealers [relating to weapons and stolen goods] provide

rather tenuous support for the application of the other-crimes rule to the weapons and television sets."

■

Again, we note intent is significant to prove the defendant was a participant by intentionally aiding and abetting. The word "plan" in sec. 904.04(2) means a design or scheme formed to accomplish some particular purpose. The testimony was that heroin dealers generally have guns and stolen goods. The State intended the jury to reason that if the defendant has guns and stolen goods, she is part of a bigger scheme to deal in heroin, and she is guilty of intentionally aiding and abetting the delivery of heroin. The judge's understanding of and use of the terms scheme or design in this fact situation is not in keeping with the limited use of the concept of "plan" in sec. 904.04(2). Evidence showing a plan establishes a definite prior design, plan, or scheme which includes the doing of the act charged. As Wigmore states, there must be "such a concurrence of common features that the various acts are materially to be explained as caused by a general plan of which they are the individual manifestations."[7]

■

Evidence of the weapons and stolen goods here is not an individual manifestation of the crime charged; this evidence does not show a series of links in the specific chain which prove the guilt of the offense charged. This evidence indicates that the defendant's home was a den of iniquity and that she had a propensity and disposition toward criminal activity. The evidence was designed

---

[7] 2 Wigmore, *Evidence,* sec. 304 (3d ed. 1940). For example, in *Leonard v. United States,* 324 F.2d 911 (9th Cir. 1963), the defendant obtained treasury checks payable to others, induced A to forge endorsements and induced B to obtain false credentials, cash the checks and split the proceeds with the defendant. Evidence of all acts was admissible to prove the existence of a larger scheme of which the crime charged was part.

to convince the jury that the defendant's possession of weapons and stolen goods was indicative of her guilt of the act charged in this case—intentionally aiding and abetting in the delivery of heroin. No specific connection was shown between this evidence and the defendant's alleged criminal acts. Weapons and stolen goods may constitute the protection and currency necessary in the realm of heroin trafficking, but the State did not demonstrate in any manner that this particular evidence was so employed. The inference of such use must be supported by more than the mere introduction of these exhibits into evidence and the broad assertion that guns and stolen goods are commonly used by those in the heroin trade. The very purpose of the other-conduct rule is to exclude evidence which is relevant only for showing a disposition to commit a crime. The very purpose of the rule was violated here.

The State attempts to save this evidence by saying that the trial court appraised the possible prejudice to the defendant and balanced it against the probative value of the evidence. This balancing under sec. 904.03, Wis. Rules of Evidence, does not come into play until the court first determines that the evidence is offered for a valid purpose, *e.g.*, intent, plan, etc. Sec. 904.04(2), Wis. Rules of Evidence.[8] Since the evidence here could not properly be pigeonholed into any of the exceptions of sec. 904.04(2), Wis. Rules of Evidence, the balancing test should not have been reached. Even if we were willing to hold that the admission of the evidence was proper and that the judge could admit the evidence under

[8] In *Kwosek v. State,* 60 Wis.2d 276, 282, 208 N.W.2d 308 (1973), this court said:

"Should such an exception be claimed, the trial judge under the rule of *Whitty* must exercise his discretion to determine whether any prejudice resulting from such evidence outweighs its probative value. This is consistent with sec. 904.03 of the Wisconsin Rules of Evidence."

sec. 904.03, there was no admonition or curative or limiting instruction cautioning the jury that the evidence was not proof of guilt but proof of intentionally aiding or abetting the crime or proof of a plan or design.

Our court has said that errors committed at trial should not serve to overturn a judgment unless it appears the result might probably have been more favorable to the party complaining had the error not occurred. *Woodhull v. State,* 43 Wis.2d 202, 215, 168 N.W.2d 281 (1969). In *Wold v. State,* 57 Wis.2d 344, 356, 357, 204 N.W.2d 482 (1973), a case involving improperly admitted evidence, the court said:

". . . The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. This test is based on reasonable probabilities. . . . A possibility test is the next thing to automatic reversal. In determining guilt 'beyond a reasonable doubt,' the human mind should not work on possibilities, but on reasonable probabilities." (Citations omitted.)

*See also State v. Dean,* 67 Wis.2d 513, 533, 227 N.W.2d 712 (1975), and sec. 817.37, Stats.[9]

After careful reading of the record, we believe that the presentation to the jury of the testimony and physical evidence linking the defendant with marijuana, stolen

[9] Because the court is of the opinion that the admission of improper evidence here was not harmless error under the formulation of *Wold v. State, supra,* that formulation of the harmless error test is accepted for purposes of this opinion. However, this writer agrees with the concurring opinion of Mr. Justice HEFFERNAN in *Kelly v. State,* 75 Wis.2d 303, 321, 249 N.W.2d 800, 809 (1977), advocating a reconsideration of the *Wold* rule for the reasons stated therein.

goods and weapons, created a definite risk that the conviction might be based on that evidence.[10]

The nature of the offense charged, of the evidence improperly admitted, of the State's evidence and of the defense are significant in making this determination. The State presented circumstantial evidence which linked the defendant to the crime. Circumstantial evidence can support a criminal conviction and may be as strong or stronger than direct evidence.[11] However, the defendant testified and attempted to explain the evidence against her. Some of that explanation was corroborated by other witnesses, and some was not. The jury had to determine the defendant's credibility.[12] The State presented a

[10] *Hart v. State,* 75 Wis.2d 371, 249 N.W.2d 810 (1977).
"The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge." 1 Wigmore, *Evidence,* sec. 194, p. 646 (3d ed. 1940).

[11] *Clark v. State,* 62 Wis.2d 194, 197, 214 N.W.2d 450 (1974), and cases cited therein.

[12] Defendant also objected to the police officer testifying to his opinion of the defendant's truthfulness. Sec. 906.08, Wis. Rules of Evidence, allows opinion evidence:

"(1) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to these limitations: (a) the evidence may refer only to character for truthfulness or untruthfulness, and (b), except with respect to an accused who testifies in his own behalf, evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

"(2) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crimes as provided in s. 906.09, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and not

number of witnesses and exhibits and spent a significant amount of trial time putting in testimony at trial of this other-conduct evidence. A significant portion of the transcript sets forth evidence we find inadmissible. In *Whitty v. State,* 34 Wis.2d 278, 297, 149 N.W.2d 557 (1967), we warned that "[e]vidence of prior crimes or occurrences should be sparingly used by the prosecution and only when reasonably necessary. Piling on such evidence as a final 'kick at the cat' when sufficient evidence is already in the record runs the danger, if such evidence is admitted, of violating the defendant's right to a fair trial because of its needless prejudicial effect on the issue of guilt or innocence. The use of such evidence under the adopted rule will normally be a calculated risk."

Our court has said the other-conduct rule is " 'predicated on the fundamental principle of justice that the bad man no more than the good ought to be convicted of a crime not committed by him.' " *Fischer v. State,* 226 Wis. 390, 402, 276 N.W. 640, 645 (1937). *See also Paulson v. State,* 118 Wis. 89, 98, 94 N.W. 771 (1903). In *Fischer v. State, supra,* at 399, we said that as a general rule (subject of course to exceptions), receipt

remote in time, be inquired into on cross-examination of the witness himself or on cross-examination of a witness who testifies to his character for truthfulness or untruthfulness."

The State, offering opinion testimony of the untruthfulness of the defendant, may lay a foundation for the testimony by showing the basis upon which the witness formed his opinion. However, the specific instances of conduct of the defendant upon which the witness based his opinion of untruthfulness cannot be inquired into on direct examination in the guise of qualifying the witness. Such a tactic would undermine the prohibition against use of specific instances of conduct. *See* 2 Weinstein & Berger, *Evidence,* p. 405–12, Advisory Committee's Note Rule 405 (1976); 3 Weinstein & Berger, *Evidence,* pp. 608–5, 608–6, Advisory Committee's Note Rule 608; secs. 608[03], 608[04] (1976).

of evidence of the defendant's bad character or commission of specific disconnected acts is prejudicial error. *See also State v. Jackson,* 219 Wis. 13, 19, 20, 261 N.W. 732 (1935) ; *Fossdahl v. State,* 89 Wis. 482, 62 N.W. 185 (1895). We concluded in *Fischer* that upon a review of the record the defendant did not have a fair trial. We conclude similarly here. "It may well be that the defendant is guilty of the offense charged against him, but he is entitled to a fair trial according to the established rules of procedure and principles of law." *Boldt v. State,* 72 Wis. 7, 17, 38 N.W. 177 (1888).

*By the Court.*—Judgment and order reversed and cause remanded for a new trial.

ROBERT W. HANSEN, J. *(dissenting).* As to the issues raised on this appeal, the writer would find four state statutes as controlling:

## (1) *OTHER-CRIMES STATUTE.*

In this state, by statute, evidence of other crimes, wrongs or acts is not admissible "to prove the character of a person in order to show that he acted in conformity therewith," but is not excluded "when offered for other purposes, such as proof of motive, opportunity, *intent,* preparation, plan, *knowledge,* identity, or absence of mistake or accident."[1] [Emphasis supplied.] The state here had the burden of proving intent to deliver and knowledge as to the presence of the contraband heroin on defendant's premises. This is particularly true in this case since the defendant claimed to have no knowledge of heroin sales originating in her own home and flatly denied knowledge or possession of any drugs whatsoever.

The trial court held that evidence as to the presence of stolen property, marijuana and illegal weapons on the

[1] Sec. 904.04(2), Stats.

premises at the time of the heroin sale had probative value to show criminal intent.[2] The writer agrees. The mental element of intent (or knowledge) may be established with the aid of circumstantial and inferential evidence.[3] A trier of fact may reasonably infer from the presence of stolen property, other contraband drugs and illegal weapons on the premises, that one charged with aiding and abetting in the delivery of a controlled substance had knowledge and intent to aid delivery of another illegal controlled substance, heroin, from her premises.[4]

We deal here not with evidence of a prior crime, but with evidence of contemporaneous acts and crimes. Our court has held that the probative value of a prior incident " 'depends in part upon its nearness in time, place, and circumstances to the alleged crime or element sought to be proved.' "[5] As to time, place and circumstances, the evidence here found to have probative value was as near as near can be. It was properly found to have probative value.

### (2) BALANCING OF FACTORS STATUTE.

In Wisconsin, by statute, probative evidence may be excluded "on grounds of prejudice, confusion, or waste

[2] Consent search of defendant's home yielded a stolen TV set, two illegally sawed-off shotguns and two bags allegedly containing marijuana, a controlled substance.

[3] State v. Spraggin, 71 Wis.2d 604, 618, 239 N.W.2d 297 (1976), a case involving this same defendant's conviction on a charge of receiving stolen property, contrary to sec. 943.34(2), Stats. (Conviction reversed in interest of justice because defendant erroneously received a felony sentence for two misdemeanor offenses.)

[4] Id. at 618, holding: "A trier of fact may infer from the presence of many similar articles that the recipient of property is engaged in the practice of selling stolen goods."

[5] Sanford v. State, 76 Wis.2d 72, 81, 250 N.W.2d 348 (1976), quoting Whitty v. State, 34 Wis.2d 278, 294, 149 N.W.2d 557 (1967).

of time," the rule being: "Although relevant, evidence may be excluded if its probative value is *substantially outweighed by the danger of unfair prejudice,* confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[6] [Emphasis supplied.] Trial courts are thus required to consider and determine " 'whether the prejudice of other-crimes evidence is so great as compared with its relevancy and the necessity for its admission in the particular case as to require its exclusion.' "[7]

The record in the instant case amply demonstrates that the trial court did in fact engage in the required balancing of factors. Taking the issue of admissibility under advisement when first raised, the trial court inspected the record, balanced probative value versus prejudice to defendant, and held the challenged evidence as to marijuana, stolen property and illegal weapons to be admissible.

The test on appeal is whether the trial court abused its discretion in admitting this evidence.[8] The key issue at trial was knowledge of the presence of contraband on the premises and the existence of intent to aid and abet its delivery. Accordingly, the writer would find no abuse of discretion. As was said in a recent case, as

[6] Sec. 904.03, Stats.—Rule 303, ALI Model Code of Evidence, originally adopted in *Whitty v. State, supra,* n. 5, at 294.

[7] *Sanford v. State, supra,* n. 5, at 82, quoting *Whitty v. State, supra,* n. 5 at 295.

[8] *See: Price v. State,* 37 Wis.2d 117, 154 N.W.2d 222 (1967), this court holding at 133: "He [defendant] contends that under that rule [Rule 303] the prejudicial effect of the evidence outweighs its probativeness; hence, it should be excluded.

"However the rule (303) leaves that decision to the trial judge, and . . . we cannot say that the evidence of the occurrence herein was of so little probative value as contrasted to its possible prejudicial effect that the trial judge abused his discretion in letting it in."

to prior acts ranging from inappropriate comments to a girl to enticing a minor for immoral purposes: " 'While the admission of this evidence was prejudicial, it was extremely relevant and was appropriately admitted.' "[9]

### (3) *LIMITED ADMISSIBILITY RULE.*

By Supreme Court rule, now included in the statutes, it is clearly provided that: "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the judge, *upon request, shall* restrict the evidence to its proper scope and *instruct the jury accordingly.*"[10] [Emphasis supplied.] The limited purpose of evidence is determined upon timely objection and motion to restrict its use,[11] or when its limited purpose later becomes apparent upon timely motion.[12]

A request for a jury instruction limiting the purpose of evidence is required. The rule, above set forth, so requires, and the Judicial Council Committee's Note to the rule so states.[13] The requirement of a request by the defendant preserves the option of defendant, as a matter of trial tactics, not to seek and secure a limiting instruction where, as in the case before us, the other-crimes evidence is probative as to the burden of proof upon the state to establish intent and knowledge, but is peripheral

---

[9] *State v. Tarrell*, 74 Wis.2d 647, 656, 247 N.W.2d 696, 703 (1976). *See also: Sanford v. State, supra*, n. 5, at 82, 83.

[10] Sec. 901.06, Stats., Wisconsin Supreme Court Rule 901.06, Wisconsin Rules of Evidence, 59 Wis.2d R21 (1973).

[11] Wisconsin Rules of Evidence, *supra*, at R21, citing *Seraphine v. Hardiman*, 44 Wis.2d 60, 170 N.W.2d 739 (1969).

[12] *Id.* at R21, citing *Huse v. Milwaukee County Expressway Comm.*, 16 Wis.2d 225, 114 N.W.2d 429 (1961).

[13] *Id.* at R21, the note reading: "A request for a jury charge instruction limiting the purpose of evidence is required. *Illinois Steel v. Paczocha*, 139 Wis. 23, 119 N.W. 550 (1909); *Domasek v. Kluck*, 113 Wis. 336, 89 N.W. 139 (1902), but see *Baraboo v. Excelsior Creamery*, 171 Wis. 242, 177 N.W. 36 (1920)."

to the alibi defense upon which the defendant here primarily relied.

In the case before us, while objection was made to the introduction of the evidence of stolen property, contraband substances and illegal weapons, no request was made by defendant's trial counsel for the submission of a limiting instruction. Since no request for such instruction was made, as required, there is here no error in the absence of a limiting instruction in the trial court's instructions to the jury.

Thus, by any test or standard, the writer would affirm, finding: No trial court error in the ruling on probativeness, no error in the probativity versus prejudice balancing, and no error in failing to give a limiting instruction since this was not requested by defendant. However, even with the majority determination of error in the balancing process and in the failure to give the limiting instruction, it is difficult to see how these alleged errors affected the substantial rights of the parties, the required test for reversal.

### (4) *REVERSIBLE ERROR STATUTE.*

The following is the test for reversal on appeal as to misdirection of the jury: "No judgment shall be reversed or set aside or new trial granted in an action or proceeding, civil or criminal, *on the ground of misdirection of the jury, or the improper admission of evidence,* or for error as to any matter of pleading or procedure, *unless* in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of *has affected the substantial rights of the party seeking to reverse* or set aside the judgment, or to secure the new trial."[14] [Emphasis supplied.]

---

[14] Sec. 274.37, Stats., adopted in 1909, replacing the earlier standard for reversal in *Boldt v. State*, 72 Wis. 7, 17, 38 N.W. 177 (1888). This section is presently sec. 817.37, Stats., by Supreme Court Order, 67 Wis.2d 761.

Our court has stated the test of harmless error to be "not whether some harm has resulted," but "whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond reasonable doubt."[15]

An independent examination of this record compels the conclusion that there is ample evidence, other than and uninfluenced by the testimony as to other-crimes, to convict this defendant beyond a reasonable doubt, of aiding and abetting the delivery of a controlled substance. Narcotics Agent Wells testified he had a telephone conversation with a woman identifying herself as Martha who arranged for the sale to him of a specified quantity of heroin for $8,000. Defendant did not deny participating in such conversation, but testified that the conversation was a "hoax" on the agent.

However the sale to the agent was made in the quantity specified and at the $8,000 price agreed to. Agent Wells drove one Johnny Hayes Anderson to a spot near defendant's home. Anderson got out of the car and walked in the direction of defendant's home, returning therefrom with the $8,000 worth of heroin. Shortly thereafter the defendant was found in the garage of her home with a loaded pistol on the floor by her side. (As to the alibi claim, the alibi witness testified he had seen her in a grocery store in the early morning hours of September 5, 1974, the date of the sale. This testimony was eroded, if not erased, by his subsequent insistence that he observed the defendant in November, not September.) Since defendant admitted participating in the telephone conversation with the agent, however such conversation was labeled, and considering the consequent sale of heroin from defendant's home in the amount specified and price agreed in the telephone conversation, ample

[15] *Wold v. State,* 57 Wis.2d 344, 356, 204 N.W.2d 482 (1973).

evidence is present, other than and uninfluenced by the other-crimes evidence, to sustain the conviction.

The writer would affirm finding (1) no error in the trial court ruling that the challenged testimony had probative value as to intent and knowledge; (2) no abuse of discretion in the trial court's balancing of probativeness and prejudice; and (3) no error in failing to give limiting instructions where no request was made by defendant for such limiting instruction. Additionally, the writer submits that the trial court errors found by the majority are not sufficient cause for reversal under the *Wold* test or the sec. 274.37, Stats., requirements for reversal.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.